UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD B. MALLETT : | NO.:  3:01CV1137 (AHN) |
| : | |
| v. : | |
| : | |
| TOWN OF PLAINVILLE; AND IN THEIR : | |
| INDIVIDUAL AND OFFICIAL CAPACITIES : | |
| JOHN BOHENKO, FORMER TOWN : | |
| MANAGER; ROBERT JACKSON, TOWN : | |
| MANAGER; SHIRLEY OSLE, ASSISTANT : | |
| TOWN MANAGER; ROBERT JAHN : | |
| DIRECTOR, WATER POLLUTION : | |
| CONTROL DEPARTMENT; DONALD : | |
| BECKER; JAMES KAINE; MICHAEL : | |
| CONKLIN; BUTCH PARADIS, FORMER : | |
| MUNICIPAL EMPLOYEES UNION : | |
| PRESIDENT; STEVEN CLARK, : | |
| MUNICIPAL EMPLOYEES UNION : | |
| PRESIDENT; AMERICAN FEDERATION : | |
| OF STATE, COUNTY AND MUNICIPAL : | |
| EMPLOYEES LOCAL 1303-56 : | SEPTEMBER 27, 2004 |

**LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF  DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DATED SEPTEMBER 22, 2004**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, the defendants, Donald Becker, James Kaine and Michael Conklin, submit the following statement of undisputed material facts in support of their Motion for Summary Judgment dated September 22, 2004.  Affidavits and other admissible evidence are attached as exhibits.

1. Richard Mallett began working for the Town of Plainville in March 1990 as an operator in the Water Pollution Control Department (hereinafter "WPC").  See **Exhibit A**, p. 27; **Exhibit B**, p. 26.

2. Mallett was encouraged to apply for the position by the defendants, Donald Becker and James Kaine. Mallett believes that he was selected for the position based on recommendations from these defendants. See **Exhibit B**, pp. 24, 26.

3. Donald Becker, James Kaine and Michael Conklin were all coworkers of Mallett's. They were not Mallett's supervisors or bosses. See **Exhibit A**, pp. 7-10; and **Exhibit B**, pp. 27, 112.

4. Mallett is six feet four and weighs two hundred thirty-five pounds. See **Exhibit B**, pp. 47-48.

5. Conklin is six feet two, weighs 210 pounds, and suffers from a neck injury. See **Exhibit C**, pp. 20-21.

6. Kaine is much smaller than Conklin, and as such, necessarily much smaller than Mallett. See **Exhibit D**, p. 74.

7. At no time did Becker, Kaine or Conklin ever punch Mallett, wrestle with him, strike him or otherwise physically hit him. See **Exhibit B**, pp. 78-79.

8. Mallett was a beneficiary of the Collective Bargaining Agreement between the Town of Plainville and his union. See Plaintiff's Complaint, Count Four, ¶¶83-84; and **Exhibit E**.

9. The Collective Bargaining Agreement sets forth a four-step grievance process that culminates in binding arbitration. Pursuant to the terms of the Agreement, the decision of the arbitrator "shall be final and binding on both parties." See **Exhibit E**, Article XIII, §13.0.

10. During the 1990-92 time period, Becker, with over 15 years at the WPC, occasionally criticized Mallett and other employees alike regarding their job performance. See **Exhibit A**, pp. 39-40; and **Exhibit B**, pp. 39-43.

11. Mallett and Kaine were friends during the 1990-92 time period. Any criticism by Kaine regarding Mallett was motivated by an honest belief that Mallett "wasn't living up to expectations of an employee." See **Exhibit B**, pp. 48-49.

12. Mallett filed a claim for Workers' Compensation in late July 1992 due to alleged job stress. As part of the settlement of his claim, Mallett agreed to a reassignment to the Department of Public Works. See **Exhibit A**, pp. 40-44; and **Exhibit B**, p. 50.

13. Before leaving the WPC, Mallett, wanting to describe the general conditions that led to his leaving the WPC, informed management that Becker had allegedly consumed alcohol while on the job in 1991 and that Becker had harassed and/or criticized his work performance. See **Exhibit A**, p. 41; and **Exhibit B**, p. 33.

14. In February 1993, Mallett reapplied to his position as an Operator 1 within the WPC. He resumed this position in June. See Plaintiff's Complaint, Count One, ¶ 27; and **Exhibit A**, p. 44-45.

15. On July 13, 1993, as Mallett was delivering a bundle of rags, he said to Becker, who was standing in the doorway, "I don't want to hit you." Becker and Mallett were several feet apart. Becker did not take any physical action toward Mallett. See **Exhibit A**, pp. 16-17, 154, 169; and **Exhibit B**, p. 56.

16. In August 1993, the then Town Manager, John Bohenko, interviewed Mallett concerning Becker's alleged sexual harassment of a co-employee. In regards to the sexual harassment investigation, Mallett informed Bohenko that Becker had on one

3

occasion grabbed his cheek and made a noise with his mouth.  See **Exhibit A**, p. 47; and **Exhibit B**, p. 61-63.

17.     Mallett also complained about Becker's conduct towards him during this time.  He claims to have reported that on July 13, 1993, Becker had called him a "fucking queer;" that in July 1993, Becker rode by in a truck and said, "fuck you, asshole;" and that on another occasion in 1993, Becker called him a "fat ass."  See **Exhibit A**, pp. 47-50, 169-70; and **Exhibit B**, p. 57.

18.     Becker was subsequently suspended for three days.  See **Exhibit B**, p. 63.

19.     Mallett never filed a grievance against a specific individual.  See **Exhibit A**, pp. 20-22, 53-54, 177.

20.     Mallett did voice some personal complaints in May 1994 regarding Becker's alleged posting of harassing messages on a bulletin board, and Kaine's alleged misuse of Town property.  Mallett has no evidence as to whether Becker was responsible for the posting of harassing messages.  Mallett reportedly believes that Kaine misused town property when: (1) with the WPC's permission, Kaine used his own gym equipment while at a town garage; and (2) with the WPC's permission, Kaine kept a dog at the garage during the daytime.  See **Exhibit A**, pp. 177-78; and **Exhibit B**, p. 65-73.

21.     Mallett did not complain about the aforesaid conduct until after he thought Becker and Kaine were behaving inappropriately towards him.  Mallett was motivated by a desire to point out the disparity in treatment that he believed he was receiving.  He had been aware of both the use of gym equipment and the keeping of the dog since he started with the Town four years earlier.  See **Exhibit B**, pp. 67-70, 71, 73.

4

22. Mallett has not identified any alleged acts of misconduct by Kaine occurring between August 8, 1995 and June 1999, a gap in time of approximately four (4) years. See Plaintiff's Complaint, Count One, ¶¶ 36, 37; and **Exhibit B**, p. 82.

23. Mallett has not identified any alleged acts of misconduct by Becker occurring between August 8, 1995 and June 1999, a gap in time of approximately four (4) years. See Plaintiff's Complaint, Count One, ¶¶ 36, 37; and **Exhibit B**, p. 82.

24. The standard overtime practice amongst the WPC crew was for the senior operator to have first call regarding all overtime. See **Exhibit A**, pp. 133, 155-56.

25. Becker was senior to Mallett. See **Exhibit A**, p. 159.

26. In 1996-1997, Mallett and Becker alternated overtime until such time as Mallett failed to call in Becker on one occasion. From then on, Becker began adhering to the standard practice of the senior man's right of first refusal as to all overtime. Becker did not treat Mallett less favorably than others, but in fact, had in the past been treating him more favorably. See **Exhibit A**, pp. 70-72, 74-76, 156.

27. There is no evidence that these defendants had any involvement in Mallett's alleged decrease in lab time in 1999 and/or his removal from the lab in 2000. Neither Becker nor Kaine were the final decision makers. See **Exhibit A**, pp. 175-76; and **Exhibit B**, p. 84.

28. "Siberia" is an isolated facility that is set off from the main building and manned by one person. See **Exhibit A**, p. 35.

29. Generally, crew members classified as Operator 1s were assigned to "Siberia." Mallett, as well as other Operator 1s and 2s within the WPC, including Kaine himself,

5

were regularly assigned to "Siberia" for various lengths of time.  See **Exhibit A**, pp. 35-38; and **Exhibit D**, p. 45.

30. Mallett believes that Kaine assigned him to "Siberia" for four months in 1999 in order to remove him from some hostility at the plant and to allow Mallett and others to do their jobs.  See **Exhibit B**, p. 85.

31. Mallett did not attend a late November/early December1999 union meeting due to his part-time job.  See **Exhibit B**, p. 87.

32. Mallett spoke with a town resident, a neighbor, regarding alleged time card abuses by certain WPC employees.  The resident approached Mallett and Mallett responded to the neighbor's questions.  Mallett did not seek out the resident to expose any wrongdoing within the Town.  He does not even recall giving information to the resident about time cards.  See **Exhibit A**, pp. 128-29, 159; and **Exhibit B**, p. 96.  See **Exhibit A**, p. 159.

33. On or about February 7, 2001, Mallett and Michael Conklin were involved in a verbal confrontation.  Conklin had heard that Mallett was being paid for work he didn't do, and said to Mallett, "that's stealing something from the town and you're going to go down for that, nigger."  Conklin turned and walked away from the altercation.  See **Exhibit A**, p. 12; **Exhibit B**, pp. 108-09; and **Exhibit C**, pp. 35-36, 46.

34. With respect to the remark, "you're going down," Conklin meant that Mallett was going to get in trouble.  See **Exhibit C**, pp. 36, 129.

35. Mallett reported the February 7, 2001 incident to his supervisor.  See **Exhibit A**, p. 168; and **Exhibit B**, p. 110.

36.   Conklin received a one-day suspension for calling Mallett a "nigger."  See **Exhibit C**, pp. 29, 30.

37.   Mallett stopped working for the Town in 2001.  See **Exhibit A**, pp. 138-39.

            DEFENDANTS,
            DONALD BECKER, JAMES KAINE and
            MICHAEL CONKLIN


            By/s/Alexandria L. Voccio
              Alexandria L. Voccio,
              ct21792
              Howd & Ludorf
              65 Wethersfield Avenue
              Hartford, CT  06114
              Phone:  (860) 249-1361
              Fax:  (860) 249-7665
              E-mail:  avoccio@hl-law.com

**CERTIFICATION**

       This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 27th day of September, 2004.

James S. Brewer, Esquire
Erin I. O'Neil-Baker, Esquire
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford, CT  06119

Dennis Ciccarillo, Esquire
Plainville Town Counsel
Eisenberg, Anderson, Michalik & Lynch
136 West Main Street
P.O. Box 2950
New Britain, CT  06050-2950

J. William Gagne, Jr., Esquire
Gagne & Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT  06109

                        /s/Alexandria L. Voccio
                        Alexandria L. Voccio