## Loislaw Federal District Court Opinions

ARVINGER v. MAYOR & CITY COUNCIL OF BALTIMORE, (Md. 1993)

811 F. Supp. 1121

Stephen ARVINGER v. MAYOR & CITY COUNCIL OF BALTIMORE, et al.

No. L-91-1070.

United States District Court, D. Maryland

January 15, 1993.

Kathleen M. Cahill, Baltimore, MD, for plaintiff.

Neal M. Janey, City Solicitor, and Burton H. Levin, and Michael Allan Fry, Asst. City Solicitors, for defendants.

MEMORANDUM

LEGG, District Judge.

Presently before the Court is a motion for reconsideration of the Court's October 8, 1992 order denying the defendants' motions for summary judgment with respect to Count I of plaintiff's complaint (the section 1983 claim).[fn1] For the reasons set forth below, the Court will GRANT the defendants' motion for reconsideration and DISMISS Count I of the complaint by separate

I. FACTS

Plaintiff Stephen Arvinger was employed as a school police officer for the City of Baltimore from 1971 to 1984. As a school police officer, he was responsible for providing security in the Baltimore public schools and held a commission from the Baltimore City Police Department which entitled him to carry a weapon and make arrests.[fn2]
**West Page 1122**

In July 1983, Arvinger offered Diane Diggs, a fellow school police officer, a ride to her brother's home after work. Arvinger waited for Ms. Diggs outside in his van. A police officer approached the van, observed cigarette rolling paper on the dashboard, and conducted a search of the van. Arvinger was arrested for drug possession after the police officer discovered a small envelope of marijuana inside the vehicle.[fn3]

Following this incident, the Department of Education conducted an independent investigation, concluded that the marijuana belonged to Ms. Diggs, and terminated her. Mr. Arvinger, however, received a brief suspension.[fn4] In 1984, Ms. Diggs brought a sex discrimination claim against the Department based on the disparate treatment she and Mr. Arvinger had allegedly received. In connection with the suit, Arvinger told an investigator that he did not know if the marijuana in question belonged to Ms. Diggs. Arvinger was terminated in December 1984

EXHIBIT F

for allegedly lying to the investigator.[fn5]

Arvinger then brought suit under 42 U.S.C. § 1983 and 1985, alleging that he was terminated for exercising his First Amendment right to speak out about an issue of public concern, namely sex discrimination. The case was tried before a jury, and Arvinger prevailed on his § 1983 claim. The Fourth Circuit reversed, holding that Arvinger's statements concerning the marijuana were not "within the realm of public concern," and thus did not merit First Amendment protection. *Arvinger v. Mayor & City Council of Baltimore*, 862 F.2d 75, 79 (4th Cir. 1988) (*"Arvinger I"*). The Fourth Circuit also found that Arvinger could pursue a retaliation claim under § 704 of Title VII, and remanded the case to the district court.

Upon remand, the parties entered into settlement negotiations and reached an agreement. The agreement provided that Arvinger would be reinstated to his previous position and that the Board of Education would recommend to the Police Department that Arvinger be recommissioned. Arvinger returned to work in August 1990 at full salary and reapplied for a commission to serve as a special police officer. The Baltimore City Police initially refused to grant Arvinger a commission,[fn6] and Arvinger filed the instant action (*Arvinger II*) on April 18, 1991. Arvinger alleges that he was originally denied his commission in retaliation for filing *Arvinger I*, and he asserts claims under § 1983 and Title VII, as well as a breach of contract claim, against the City of Baltimore and two individual defendants.

The defendants moved for summary judgment, and this Court issued an order on October 8, 1992 which disposed of a number of claims and parties.[fn7] The defendants then filed a motion for reconsideration raising an issue that was not discussed in their initial summary judgment motion. The defendants now contend that Arvinger's § 1983 claim rests exclusively on an alleged violation of Title VII, which cannot support an independent § 1983 action. Arvinger responds that his § 1983 claim is actionable because it is predicated upon an alleged violation of the First Amendment.

Like many aspects of § 1983 law, this issue is not without complexity and uncertainty. The Court has carefully reviewed the case law, however, and concludes that Title VII provides the exclusive remedy available to Arvinger under the facts as alleged. Accordingly, the defendants' motion for summary judgment on Count I will be granted by separate order.

II. DISCUSSION

As the Sixth Circuit explained in *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984), section 1983 is a

**West Page 1123**
"remedial statute which does not create substantive rights . . . [but] provides a remedy for rights created [under the Constitution or laws of the United States]." In order to state a cause of action under § 1983, a plaintiff must allege (i) conduct by someone acting under color of state law and (ii) a deprivation of rights secured by a federal statute or the Constitution. *Id.*

A number of cases have addressed the question of whether Title VII creates federal rights for which § 1983 provides a remedy. *See, e.g., Johnston v. Harris County Flood Control District,* **869 F.2d 1565**, 1573-76 (5th Cir. 1989); *Yatvin v. Madison Metropolitan School Dist.,* **840 F.2d 412**, 419-20 (7th Cir. 1988); *Keller v. Prince George's County,* **827 F.2d 952**, 963 (4th Cir. 1987); *Greenwood v. Ross,* **778 F.2d 448** (8th Cir. 1985); *Day,* 749 F.2d at 1203-5. The majority view is that an alleged violation of Title VII alone "will not constitute an underlying statutory violation for purposes of imposing liability under § 1983," because Title VII provides an exclusive remedy for a violation of its terms. *Johnston,* 869 F.2d at 1574. Courts also note that it would frustrate the intent of Title VII to allow a plaintiff to circumvent Title VII's administrative and procedural framework by bringing to federal court a § 1983 suit based solely upon an alleged violation of Title VII.

If, however, a plaintiff claims that "unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive." *Id.; accord Ratliff v. City of Milwaukee,* **795 F.2d 612**, 623 (7th Cir. 1986); *Day* 749 F.2d at 1204. In *Keller,* the Fourth Circuit, after an exhaustive discussion of the legislative history of Title VII, including the 1972 Amendments, held that Title VII did not preempt a concurrent § 1983 action based on an alleged violation of the Fourteenth Amendment. 827 F.2d at 963. This Court reads *Keller* to stand for the proposition that Title VII does not bar a concurrent § 1983 claim that is grounded upon an independent constitutional violation or a federal statutory right.

Arvinger alleges that the defendants denied him a new commission because he had filed suit against, and testified against, Baltimore City in *Arvinger I.* Arvinger further contends that, in doing so, the City retaliated against him for having spoken out on a matter of public concern and violated his First Amendment rights, entitling him to bring suit under § 1983. The question before the Court, therefore, is whether the filing of *Arvinger I,* and/or the testimony which Mr. Arvinger gave in connection with that suit, constitute speech that is protected by the First Amendment.

As the Fourth Circuit explained in *Arvinger I,* **862 F.2d 75**, 77 (4th Cir. 1988), speech by a public employee merits First Amendment protection if it "involve[s] a matter of public concern." This is a question of law to be decided by the court. *Id.* If the Court finds that the speech at issue involves a matter of public concern, the Court must employ a balancing test, weighing the interests of the employee in commenting upon matters of public concern against the interests of the State. *Id.* (citing *Pickering v. Board of Education,* **391 U.S. 563**, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). This balancing test is unnecessary if the Court determines that the speech at issue does not warrant First Amendment protection. *Id.*

Whether the filing of a discrimination suit, or testimony given as a witness during civil rights litigation, constitutes speech worthy of First Amendment protection is an issue of great complexity which has split the circuits.[fn8] In *Greenwood v. Ross,* 778 F.2d at 457, the Eighth Circuit found that the

"filing of an EEOC charge and a civil rights lawsuit are activities protected

**West Page 1124**

by the First Amendment." *Accord Johnston,* 869 F.2d at 1578. In *Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d at 420, however, the Seventh Circuit rejected the contention that "every case of alleged discrimination can be presumed to contribute to the marketplace of ideas." *Accord Rice v. Ohio Dept. of Transp.,* 887 F.2d 716 (6th Cir. 1989) (vacated on other grounds); *Gray v. Lacke,* 885 F.2d 399 (7th Cir. 1989).

The main dispute between those courts which find that the filing of a civil rights suit and/or testimony given during the course of such a suit inherently constitute protected speech, and those that hold to the contrary, concerns the relative weight the courts accord to the *context* in which the speech is made. In *Johnston,* for example, the Fifth Circuit conceded that Johnston's speech, which involved matters of personal concern, was of a type which, "as a general rule," is not entitled to First Amendment protection. 869 F.2d at 1577. The Court reasoned, however, that the context in which Johnston spoke (a formal hearing) was "sufficient to elevate the speech to the level of public concern." *Id.* at 1578. Thus, the Court held that, "when an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern," and his speech therein is entitled to First Amendment protection regardless of its content. *Id.; accord Greenwood,* 778 F.2d at 457 (content of speech not analyzed; filing of EEOC charge automatically protected by First Amendment).

Other courts, however, place more importance on the content and purpose of the speech than they do on the context in which it is made. These courts are not automatically willing to accord First Amendment protection to the filing of a lawsuit or testimony relating to it. Rather, these courts consider the nature of, and motivation behind, the suit in question in order to determine whether it constitutes protected speech. Thus, for example, the *Yatvin* court distinguished between cases that "seek relief against pervasive or systemic misconduct by a public agency [or are] . . . part of an overall effort by the plaintiff or by persons or groups allied with her to correct allegedly unlawful practices or bring them to public attention," and the "run-of-the-mine single-plaintiff discrimination case." 840 F.2d at 420.

Thus, the courts in this group ask: (i) whether the suit in question was filed on behalf of a single plaintiff or on behalf of a group; (ii) whether the suit seeks broad injunctive relief or merely damages; and (iii) whether the suit furthers an interest larger than the plaintiff's personal concerns. *See, e.g., Gray,* 885 F.2d 399, 412 (7th Cir. 1989); *Swick v. City of Chicago,* No. 92 C 1650, 1992 WL 293285, * 4, 1992 U.S. Dist. LEXIS 15578, *12 (N.D.Ill. 1992) ("Determining whether an employee's speech is a matter of public concerns requires us to consider if the speaker is speaking more like a citizen or a disgruntled employee whose statements are primarily of personal interest"); *Sweeney v. Bd. of Educ. of Mundelein Consol. H.S.,* 746 F. Supp. 758, 763-64 (N.D.Ill. 1990) ("There is a difference between criticisms directed at the institution in general and disputes with which the complainant has an intimate personal involvement"); *Owens v. City of Derby, Kan.,*

586 F. Supp. 37, 41 (D.Kan. 1984) (speech related primarily to a personal employment dispute is not protected by the First Amendment).[fn9]

**West Page 1125**

The Fourth Circuit sided with this latter group of courts in *Arvinger I,* in which it found that the purpose and content of the speech at issue, rather than the context in which it is given, are of paramount importance in determining whether speech by a public employee merits First Amendment protection. 862 F.2d at 79. In *Arvinger I,* the Court emphasized that the district court, which had accorded First Amendment protection to Arvinger's statement to an investigator during the course of a coworker's sex discrimination suit, had "improperly elevated context over content." *Id.* The Court found that "it is, in this case, irrelevant for First Amendment purposes that the statement was made in the course of an official hearing." *Id.* The Court then went on to hold that Arvinger's speech, which concerned ownership of a marijuana cigarette, and which was made "solely to further the interests of Mr. Arvinger and Ms. Diggs (the co-worker)," was not entitled to First Amendment protection. *Id.*[fn10]

Following the guidance offered by *Arvinger I,* this Court has examined the purpose, content, and nature of both Arvinger's civil rights suit against the City of Baltimore, and the testimony he gave during the course of the ensuing litigation. The Court finds that neither the filing of the lawsuit nor the testimony Arvinger gave therein constitutes speech about a matter of public concern, and hence, neither is protected by the First Amendment. Arvinger filed suit and testified on his own behalf for personal reasons, in order to be reinstated to his position as a school policeman, rather than in an effort to further public debate about issues of broad public concern. *See Arvinger* at 70; *see also Yatvin* 840 F.2d at 420 (plaintiff made no attempt to distinguish her suit from the typical discrimination case). Arvinger sought damages for himself, rather than broad injunctive relief, and made no claim about systematic injustice.

The claims made in *Arvinger I* are best characterized as individualized grievances, in contrast to public-spirited speech. Thus, Arvinger has no independent First Amendment claim upon which his § 1983 action can be based. Accordingly, the Court DISMISSES Count I of the complaint.

IT IS SO ORDERED.

ORDER

For the reasons set forth in a memorandum dated this day, the Court hereby GRANTS defendants' motion for reconsideration and DISMISSES count I of the complaint.

The Court is of the opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5(a), an appeal of this Order may be sought by filing a petition for permission to appeal with the clerk of the Court of Appeals within ten days of the entry of

this Order.

By virtue of this Order, the within case will be stayed for an indefinite period of time. Accordingly, it is, this 15th day of January, 1993, hereby ORDERED that this case is administratively closed, without prejudice, however, to the right of either party to reopen this case for good cause shown upon a proper application to the Court.

IT IS SO ORDERED.

APPENDIX

MEMORANDUM AND ORDER

[Filed Oct. 9, 1992]

On October 6, 1992, the Court held a non-evidentiary hearing with respect to the defendants' motions for summary judgment and the plaintiff's motion for leave to file a third amended complaint. Based on the
**West Page 1126**
argument at the October 6 hearing and the papers filed by the parties, the Court hereby ORDERS as follows:

1. The Baltimore City Police Department is not a juridical entity subject to suit. Accordingly, the Baltimore Police Department is DISMISSED as a party in the instant action.

2. The Baltimore City Department of Education is not a juridical entity subject to suit. The Department of Education is DISMISSED as a party to this action.

3. Plaintiff's motion for leave to file a Third Amended Complaint is DENIED for the following reasons:

   a. The instant action was filed on April 18, 1991.

   b. On July 8, 1991, plaintiff filed a motion for leave to file an amended complaint, which was granted on January 21, 1992. On February 20, 1992, plaintiff filed a motion for leave to file a second amended complaint, which was granted on March 10, 1992. The motion for leave to file a third amended complaint was filed on September 8, 1992, only forty-one days before the scheduled trial date and forty-two days after the discovery deadline had passed.

   c. Plaintiff's attorney concedes that complete relief can be afforded her client without adding the additional defendants named in the proposed third amended complaint.

   d. If the Court were to permit the amendment, the newly-named defendants would be entitled, as a matter of justice, to consult counsel and frame a defense. This would delay the commencement of the trial considerably.

4. Count IV of the Second Amended Complaint (Intentional Infliction of Emotional Distress) is DISMISSED by agreement of the parties.

5. Count V of the Second Amended Complaint (Access to Public Records) is DISMISSED because Md. State Gov't Code Ann. §§

10-611 *et seq.* do not provide for a private right of action for damages.

6. Count III of the Second Amended Complaint (§ 1985) is DISMISSED. Plaintiff has failed to allege or demonstrate racial or other class-based discriminatory animus on the part of the defendants, a necessary prerequisite for the maintenance of a § 1985 action.

7. Defendant Daniel's motion for summary judgment based on qualified immunity is DENIED. Under the first prong of the *Harlow* test, The Court finds that the law prohibiting retaliation against Title VII plaintiffs, as well as the constitutional protection of speech on matters of public concern, were clearly established at the time of the incidents which form the basis of this suit. *See Harlow v. Fitzgerald,* **457 U.S. 800,** 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Although an objective standard is generally applied in the second prong of the *Harlow* test concerning the reasonableness of the defendant's actions, the Court finds that Daniel's subjective motivation is a proper subject of inquiry in this dispute because the plaintiff has identified his intent as an essential element of his claim. *See Gooden v. Howard County, MD.,* **954 F.2d 960,** 969-70 (4th Cir. 1992); *Martin v. D.C. Metropolitan Police Dept.,* **812 F.2d 1425,** 1435 (D.C.Cir. 1987); *Hobson v. Wilson,* **737 F.2d 1,** 29 (D.C.Cir. 1984). The Court further finds that the plaintiff has produced sufficient evidence in support of his claim of unconstitutional motive on the part of Daniel to withstand a motion for summary judgment.

8. The motions for summary judgment are DENIED with respect to counts I (§ 1983), II (Title VII), and VI (breach of contract) of the second amended complaint.

9. On or before October 13, 1992, the following documents shall be submitted to chambers by each party; the documents in subparagraphs a-d shall also be filed with the Clerk of Court:

   a. Proposed voir dire questions.

   b. Proposed non-boilerplate jury instructions. Proposed jury instructions may be referenced by listing the applicable section numbers from *Maryland Civil Pattern Jury Instructions;* Devitt and Blackmar, *Federal Jury Practice*
**West Page 1127**
   *and Instructions;* or Sand, et al., *Modern Federal Jury Instructions.* Otherwise, proposed instructions should (i) be typed one per page; (ii) be numbered and assembled in the order in which they will be read to the jury; and (iii) include a citation to the authority supporting the instruction.

   c. Proposed special verdict forms. The Court would appreciate receiving the requested voir dire, jury instructions, and special verdict forms on IBM, Word Perfect 5.0 or 5.1 diskettes.

   d. A brief proposed statement to be read to the venire panel explaining the nature of the case in general terms.

   e. A three-ring binder containing the party's proposed exhibits, including impeachment exhibits, which the party intends to offer into evidence at trial. Impeachment exhibits

need not be disclosed to other parties.

f. A witness list identifying those witnesses whom the party intends to call at trial in its case-in-chief. The party who lists a witness shall guarantee the attendance of that witness at trial unless all parties agree that the witness may be excused. Any witness not listed shall not be permitted to testify except on rebuttal.

g. A copy of the report, if any, of each expert witness who will testify at trial.

IT IS SO ORDERED.

Date: October 8, 1992

(s) Benson E. Legg

Benson Everett Legg

United States District Judge

[fn1] On October 8, 1992, the Court issued a memorandum and order granting summary judgment in favor of the defendants with respect to counts III, IV, and V of Arvinger's second amended complaint. The Court denied the motions for summary judgment with respect to counts I (§ 1983), II (Title VII), and VI (breach of contract).

[fn2] Mr. Arvinger was employed by the Mayor and City Council of Baltimore.

[fn3] The details of this incident and the litigation which followed are detailed in *Arvinger v. Mayor & City Council of Baltimore, et al.*, 862 F.2d 75, 76-77 (4th Cir. 1988).

[fn4] The charges against Arvinger were dismissed in August 1983.

[fn5] Ms. Diggs prevailed in her suit.

[fn6] Arvinger received a commission four months later after the City Solicitor's office intervened on his behalf.

[fn7] A copy of the order is attached.

[fn8] In *Curl v. Reavis*, 740 F.2d 1323, 1329 n.5 (4th Cir. 1984), the Fourth Circuit noted that "an employee's protection against being discharged in retaliation for filing EEOC charges . . . is not grounded in the Constitution but in Title VII." Unlike Curl, however, Arvinger alleges that he was retaliated against for pursuing a § 1983 suit against the defendants. Although the Fourth Circuit ultimately found that Arvinger's § 1983 claim was invalid, and that his sole remedy was a Title VII claim, this Court's analysis will not rely exclusively on *Curl*.

[fn9] Although Arvinger points to a few district court cases in support of his contention that the filing of *Arvinger I* constitutes protected speech, these cases are distinguishable from the instant case. In *Christensen v. Lawrence F. Quigly Mem. Hosp.*, 656 F. Supp. 14, 19 (D.Mass. 1985), the district court held, in the context of a motion to dismiss, that the plaintiff

had a "potential free speech claim." The Court did not address the merits of the claim. In *Brown v. Town of Allenstown,* 648 F. Supp. 831, 839 (D.N.H. 1986), the Court again considered a motion to dismiss without discussing the merits of the plaintiff's First Amendment claim. In *Dougherty v. Barry,* 604 F. Supp. 1424, 1428-29 (D.D.C. 1985), the plaintiff filed a complaint on behalf of himself *and 16 other persons* alleging systematic race discrimination. In addition, the defendants conceded that the filing of the complaint constituted protected speech. In *Ziccarelli v. Leake,* 767 F. Supp. 1450, 1454 n. 4 (N.D.Ill. 1991), the court found that testimony given at a *death penalty* hearing was protected speech because the death penalty was a matter of public concern. Finally, *McCauley v. Greensboro City Bd. of Educ.,* 714 F. Supp. 146 (M.D.N.C. 1987), preceded the Fourth Circuit's decision in *Arvinger I* and is inconsistent with its reasoning.

[fn10] The Court notes that *Curl v. Reavis,* 740 F.2d at 1329 n. 5, strongly suggests that the filing of *Arvinger I* was not an act protected by the First Amendment.
**West Page 1221**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved