## Loislaw Federal District Court Opinions

ROUSE v. CITY OF MILWAUKEE, (E.D.Wis. 1996)

*921 F. Supp. 583*

Leah M. ROUSE, and Michelle M. Molinari, Plaintiffs, v. CITY OF MILWAUKEE, a public body corporate and politic, Arthur Jones, individually and in his official capacity as Inspector, Milwaukee Police Department, and Allen R. Lane, individually, Defendants.

Civil A. No. 94-C-1101.

United States District Court, E.D. Wisconsin

March 25, 1996.

**West Page 584**

Lynn M. Novotnak, First, Blondis, Albrecht, Bangert & Novotnak, Milwaukee, WI, for plaintiffs.

Bruce D. Schrimpf and Tracy M. Johnson, Assistant City Attys., Milwaukee, WI, for City of Milwaukee and Jones.

John E. Machulak, Machulak, Hutchinson, Robertson, Dwyer & O'Dess, Milwaukee, WI, for Lane.

**West Page 585**

### DECISION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

REYNOLDS, District Judge.

### BACKGROUND

Plaintiffs, two female police officers, allege that one of their male co-workers, Officer Allen Lane, engaged in a pattern of sexual harassment and discriminatory behavior while on the job. They are suing the City of Milwaukee and then Captain Arthur Jones under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. for failing to remedy a sexually hostile work environment. Plaintiffs are also suing all three defendants under 42 U.S.C. § 1983 for violation of their constitutional rights.

Officer Lane filed a summary judgment motion on July 21, 1995, arguing that plaintiffs failed to show that any of his actions occurred under color of state law. The City of Milwaukee and Captain Jones filed a summary judgment motion on July 24, 1995, arguing that they acted promptly and reasonably to remedy the hostile work environment. The court grants both motions.[fn1] Because no federal claims remain, the court also dismisses the pending state law assault and battery claims.

### FACTS

The plaintiffs, Leah Rouse and Michelle Molinari, and defendant Allen R. Lane, were at all times material to the matter police officers for the City of Milwaukee Police Department (hereinafter "MPD").

At no time material to the complaint, did Officer Lane achieve any rank higher than police officer within MPD. (Lane

EXHIBIT G

Aff. ¶ 9.) He was never in an actual position of authority over either of the plaintiffs. (Rouse Dep. at 76, 77; Molinari Dep. at 66.)

Arthur Jones was the captain of District No. 7 between August of 1991 and the end of August 1992. He was subsequently promoted to Field Deputy Inspector which includes, among other things, responsibility for the disciplinary matters of all members of the police department. (Jones Dep. at 6.)

The following are specific incidents of harassment alleged by the plaintiffs. Officer Lane denies that any of them occurred.

## A. PLAINTIFF'S ALLEGATIONS[fn2]

### Officer Rouse

Officer Rouse alleges that Lane sexually harassed her almost daily throughout her employment from mid-1991 through August of 1993, including the following specific incidents: he pulled her hair back and stuck his tongue in her ear; he made comments to her about male genitalia and her sexual preferences; and he bit her ear and made sexual remarks about her looks. (Rouse Dep. at 13, 18, 22-23, 50, 52-53, 66, 73, 80, 82.)

On July 2, 1993, Officer Rouse alleges that Officer Lane choked her and that Molinari witnessed it.[fn3] On August 2, 1993, Officer Rouse was at the jail and Lane called her a "bitch". Officer Rouse felt this was the "final straw". (Rouse Dep. at 174.) Two days later, August 4, 1993, she complained to Lieutenant Steve Settingsgaard and to the Internal Affairs Division about Officer Lane's conduct. (Rouse Dep. at 24.) Prior to this date, she had not complained of Officer Lane's conduct to Captain Jones or any other supervisory personnel. (*Id.*) Lieutenant Settingsgaard offered to take a detailed

**West Page 586**

statement from Officer Rouse, but she indicated that she would make it directly to the Internal Affairs Department ("IAD"). (Settingsgaard Dep.) On August 15, 1993, Officer Lane was ordered to have no contact with Officer Rouse. (Lane Dep. at 194-195; Dep. Ex. 81; bates 292.)

Officer Rouse also requested that Officer Lane be ordered not to come to District Seven station except on police business. Her request was initially denied by Captain Johnnie Smith. (Settingsgaard Dep. at 55.) Officer Rouse disagreed with Captain Smith's conclusion that Lane posed no reasonable threat to her personal safety. (*Id.*)

Officer Rouse subsequently filed a discrimination claim with the EEOC and contacted the City Attorney's office on or about October 29, 1993, and made the same request. Officer Lane was then ordered to stay out of District Seven station unless ordered to the contrary. (Settingsgaard Dep. at 54-56; Dep.Ex. 50; Heinen Dep.Ex. 92; Lane Dep. at 195; Dep.Ex. 82; bates 293.)

On or about November 14, 1993, Officer Lane allegedly approached Officer Rouse at the jail, which is not at District Seven, and asked a prisoner if Officer Rouse was mistreating her. (Franklin Aff., bates no 295.)

Officer Rouse alleges that although Lane had been harassing her since mid-1991, she had been reluctant to file charges. She felt Officer Lane was well connected with upper-level management and that her complaints would not be taken seriously. She also alleges that she was afraid of reprisal from Officer Lane and other officers in the form of ostracism and failure provide backup in the field. (Rouse Dep. at 31,

34-37, 75-76.) Rouse had her name and address removed from police department records accessible to other officers. (Settingsgaard Dep. at 47; Dep.Ex. 49.)

Rouse never complained to Captain Jones about Lane's conduct. (Rouse Dep. at 25-26.)

**Officer Molinari**

Officer Molinari, started with MPD on November 9, 1992. She was assigned to District Seven on or about April 7, 1993. (Complaint, ¶ 26). Officer Molinari alleges that Officer Lane sexually harassed her through July of 1993. (Molinari Dep. at 31-33, 43, 48, 65.)

Her allegations include several incidents including the touching of her neck and hair, comments about the size of his genitals, his ability to satisfy female employees, that women on the job were only good for sex, and other vulgarities and sexual innuendo. (Molinari Dep. at 38, 48, 95-97.) Molinari did not complain because she was on probation and feared retaliation. (*Id.* at 50, 54.)

On or about July 24, 1993, there was an incident where Officers Lane and Molinari collided in a hallway. Molinari alleges that Lane moved backwards into her pinning her against a wall, and put his arms backwards around her. Two days later, on July 26, 1993, Molinari made her first complaint to Lieutenant Steven Settingsgaard about Officer Lane's conduct. (Molinari Dep. at 95-97.) On or about that same day, Lt. Settingsgaard ordered Lane to have no contact with Officer Molinari. The no contact order included comments, suggestions, remarks, gestures, either written or oral. (Settingsgaard Dep. at 17.) Settingsgaard advised Officer Lane that a violation of the orders would result in disciplinary action. (*Id.*) Lane also received a copy of the policy on equal opportunity and sexual harassment. (*Id.*) The order was not punitive but was to insure no contact during the pending investigation. (*Id.* at 17-19, 47; Dep.Ex. 31, 32, 48; bates 75-76.)

When Officer Lane found out about Officer Molinari's complaint, he said that he would not provide her backup on the street. (Lane Dep. at 172-173.)

On July 28, 1993, Lane jumped on a squad car in which Molinari was an occupant and walked across the hood. (Settingsgaard Dep. at 31, 34, 36.) Officer Lane testified that he did it because he was late for work and that he did not see Officer Molinari in the car. (Lane Dep. at 175-176.)

On July 29, 1993, the Department transferred Lane from the Seventh District to the jail because of Molinari's complaint.
**West Page 587**

On November 2, 1993, the Department issued an order prohibiting Lane from going to the District No. 7 station.

On April 20, 1994, Ms. Molinari filed her charges with the EEOC.

On April 26, 1994, the Deputy Inspector Franklin of the IAD, concluded his investigation. He recommended charging Lane for, among other things, sexual harassment. He concluded that Lane had violated the Department's rules on sexual harassment at least six times. (Arreola Dep. at 30-31, Franklin Dep. at 55.) Chief Arreola signed the charging order on July 14, 1994. Lane was terminated on July 20, 1994.**[fn4]** (Arreola Dep. at 38, 108.)

## B. PRIOR ALLEGATIONS

There were several complaints against Officer Lane, prior to plaintiffs' allegations. On March 7, 1990, Lt. Gary Cox of MPD reported to Capt. James Warren that several female officers and civilians had complained about sexual harassment of them by Police Officer Allen R. Lane. (Lane Dep. at 34.) That same day, Lt. Cox admonished Officer Lane about his conduct. (Lane Dep. at 35.)

On April 24, 1991, a female officer made an anonymous complaint. On April 26, 1991, Sgt. Wayne Murphy required that Lane read and sign the sexual harassment policy. (Lane Dep. at 55-56.) On May 9, 1991, a Lt. Mark Meyer issued Lane a "PD-30" disciplinary form. A PD-30 is the most minimal form discipline an officer can receive for misconduct. (Jones Dep. at 8.) Lane responded that he was not guilty and noted, in his deposition testimony, that he did not give a lot of weight to PD-30's. (Lane Dep. at 24-25, 52-54.)

When Arthur Jones became Captain in the fall of 1991, Officer Lane asked Jones for the identity of the complainant. Captain Jones gave him the name.

On or about October 9, 1991, a female officer reported that Lane "came up in her face" and made several comments to her in an elevator. Captain Jones and a Lt. Meyer met with Officer Lane about the incident. Captain Jones concluded that it was not of a sexual nature. (Jones Dep. at 73.)

On February 18, 1992, a temporary clerk alleged that Lane sexually harassed her. The complaint was referred to Captain Jones. (Jones Dep. at 22, 36.) On or about March 12, 1992, Jones ordered an internal investigation. On May 6, 1992, it was concluded that Lane had harassed the woman in the February 18, 1992 incident. Lane denied the charges. On June 4, 1992, Jones recommended that charges be brought against Lane. (Jones Dep. at 52-52.) The matter was referred to the Internal Affairs Division (IAD). The investigation was referred to Sgt. Anna Ruzinski on June 12, 1992. (Ruzinski Dep. at 4.)

On September 18, 1992, Ruzinski issued her report concluding that Lane had sexually harassed women, that Lane had problems interacting with female officers, and that the disciplinary measures taken up until that point were ineffective. (Ruzinski Dep.)

On January 26, 1993, charges were issued for several items, including sexual harassment and the filing of false reports with regard to those incidents. (Lane Dep. at 139-140; Arreola Dep. at 21; Ruzinski Dep. at 56-57.)

On January 7, 1994, Police Chief Philip Arreola signed an order imposing a ten-day suspension upon Officer Lane. (Officer Lane appealed the order and did not serve it. (Lane Dep. at 143.))

Jurisdiction is proper pursuant to **28 U.S.C. § 1331** and 1343. Venue is proper in the Eastern District of Wisconsin pursuant to **28 U.S.C. § 1391**(b).

### SUMMARY JUDGMENT STANDARD

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a
**West Page 588**

matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317**, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53 (1986). The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, **40 F.3d 146**, 150 (7th Cir. 1994).

### ANALYSIS

#### § 1983 Claim

Officer Lane did not act under color of law, thus, plaintiffs' § 1983 claim fails. To maintain a claim under **42 U.S.C. § 1983**, plaintiffs must demonstrate, among other elements, that the defendant acted under color of state law. *Webb v. City of Chester, Illinois*, **813 F.2d 824**, 828 (7th Cir. 1987). Color of law is determined by the relationship between the defendant's misconduct and the power, authority and duties conferred by the state. *Polk County v. Dodson*, **454 U.S. 312**, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981). That the defendant is a police officer does not resolve the color of law question. *Gibson v. City of Chicago*, **910 F.2d 1510**, 1516 (7th Cir. 1990). In addition, courts have generally declined to find liability under § 1983 against a co-worker unless the harassment involved an abuse of authority or position. *Woodward v. City of Worland*, **977 F.2d 1392**, 1400 (10th Cir. 1992); *Anthony v. County of Sacramento Sheriff's Dept.*, **845 F. Supp. 1396**, 1400 (E.D.Ca. 1994).

Plaintiffs point to no facts from which a reasonable jury could infer a relationship between Lane's alleged misconduct and his state appointed power, authority, position, or duties. Officer Lane had no authority or power over the plaintiffs. They all held the same rank and he had no authority to give them orders. Plaintiffs argue that the following are evidence of power: Officer Lane's seniority in the department served to create a *de facto* supervisory relationship; that he had a close affiliation with Police Chief Arreola and was "well-connected and invulnerable"; and, that he was a seasoned officer, used to exercising authority. It would not be reasonable to draw the inferences plaintiffs assert. First, there are no facts to support plaintiffs' *de facto* authority argument. Second, Lane and the police chief did play racquetball and one might infer a close relationship, but it is not reasonable to infer from those facts that Officer Lane was either well-connected or invulnerable. Finally, although Lane was a more senior officer, plaintiffs have presented no facts from which a jury could infer from that, that officer Lane exercised or had any authority.**[fn5]**

In addition, Officer Lane's alleged misconduct was not related to his duties. In *Anthony*, a black female deputy sheriff filed a § 1983 claim against co-workers alleging racial harassment, sexual harassment, and retaliation for her defense of black inmate rights. The defendants argued that they were not acting under color of law because they were the woman's co-workers and not her supervisors. The court focused on the

sheriff's duties to determine whether a § 1983 claim could be maintained. Specifically, the court noted that the defendant deputy sheriffs had specific responsibilities that included the well-being of prisoners, and responding to complaints about prisoner treatment. *Id.* Because the deputy sheriffs abused their position and responsibility, the court held that they acted under color of law. In the case before the court, there is no such unique relationship between Officer Lane's duties or responsibilities and his alleged

**West Page 589**

harassment of plaintiffs. While the nature of his employment may have placed him in the paths of the plaintiffs, there was nothing specific or unique about his assigned duties — in contrast to the parties in *Anthony* — that brought him into contact with the plaintiffs.

For the above reasons, the court dismisses plaintiffs' § 1983 claim against all defendants. Although plaintiffs did not directly address the § 1983 claim against defendants Jones and the City of Milwaukee, the "color of law" question is dispositive of the issue. Plaintiffs did argue this issue with respect to defendant Lane.

### Title VII Hostile Work Environment

A sexually "hostile work environment" exists under Title VII where the conduct in question has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *Meritor Savings Bank v. Vinson*, **477 U.S. 57**, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). The City of Milwaukee does not argue the absence of a hostile environment, but rather that it responded appropriately to remedy the hostile work environment. The court agrees.

An employer will be liable for the actions of its employee in creating a hostile work environment where the employer knew or should have known of the employee's acts and failed to take appropriate remedial action. *Brooms v. Regal Tube Co.*, **881 F.2d 412**, 420 (7th Cir. 1989). To be appropriate, the response must be prompt and reasonably calculated to end the harassment. *Guess v. Bethlehem Steel Corp.*, **913 F.2d 463**, 465 (7th Cir. 1990). An employer is not required to terminate a harasser to satisfy the appropriate remedial action test. *Barrett v. Omaha Nat'l Bank*, **726 F.2d 424**, 427 (8th Cir. 1984).

Promptness is not an issue here; MPD responded quickly after each complaint filed by Officers Rouse and Molinari. Officer Molinari first complained on July 26, 1993. MPD issued a no contact order that same day and informed Lane that he would be disciplined if he violated it. Two days later, Officer Lane jumped on Molinari's squad car. MPD responded one day later by transferring Officer Lane from District Seven to the jail. Officer Rouse first complained on August 4, 1993. MPD responded eleven days later on August 15 by issuing a no contact order. These actions were prompt.**[fn6]**

Plaintiffs argue that the department should have disciplined Lane more severely, but that is not the question. The question is whether actions they took were reasonable. Almost immediately after the plaintiffs complained about Lane's conduct, the department issued orders that Lane was to have no contact with the plaintiffs. Lt. Settingsgaard warned Officer Lane that he would be disciplined if he violated the Molinari order. After Officer Lane jumped on Molinari's car, the department escalated its actions and transferred Lane from District Seven to the jail. These actions were reasonable.

Finally, plaintiffs argue that MPD's prior course of conduct in dealing with Officer Lane and sexual harassment complaints is evidence of its negligence. While it is true that the employer cannot ignore its prior experience with an employee, *Dornhecker v. Malibu Grand Prix Corp.*, **828 F.2d 307**, 309-10 (5th Cir. 1987), the record of the prior complaints reflect, at most, that MPD needed to take a tougher measure of discipline than it had in the past. That is what happened here. The no-contact orders and the transfer to the jail put Officer Lane on notice that the department would not condone his behavior. More importantly, they reflect the department's using an increased degree of disciplinary action. It is important to remember that, assuming *arguendo* that Lane had a prior history, the department's actions were taken prior to a complete investigation and prior to a finding of guilt.

The court is cognizant of the fact that the combination of a male dominated institution and the alleged existence of a code of silence on the police force could produce a stifling
**West Page 590**
environment for sexual harassment claims. However, the plaintiffs have not raised facts sufficient to support such an argument.

For the above reasons, the court **GRANTS** defendants' motions for summary judgment. The case is dismissed.

**SO ORDERED.**

[fn1] In his motion, defendant discussed his liability under Title VII. Plaintiffs did not bring a Title VII claim against Lane, thus the discussion is moot.

[fn2] The court has not found that Officer Lane committed any of these acts, but is simply restating the allegations of the plaintiffs.

[fn3] Internal Affairs Division Sergeants Brunow and Heinen were assigned to the criminal investigation of Leah Rouse's allegation that Officer Lane choked her in the hallway at District Seven. (Heinen Dep. at 5.) When Sergeants Brunow and Heinen spoke with Officer Lane to advise him of the investigation, Officer Lane was disrespectful and refused to answer any questions or give any information. (Heinen Dep. at 11.) The MPD sought to file charges against Lane but the District Attorney's office declined to prosecute the battery charge resulting from the alleged incident. (Rouse Dep. at 176-177.) Sgt. Heinen issued Lane a Municipal Court citation for disorderly conduct. (Brunow Dep.Ex. 26.) Lane was found guilty and fined $100.

[fn4] Lane was subsequently reinstated by the Fire and Police Commission after serving a twenty-day suspension without pay.

[fn5] Plaintiff cites *Poulsen v. City of North Tonawanda,* **811 F. Supp. 884** (W.D.N.Y. 1993) — for the proposition that authority is a question of fact for the jury. However, in *Poulsen,* the defendant held a supervisory position over the plaintiff; the issue was the degree of his authority.

[fn6] Plaintiffs have alleged that the department was on notice prior to their complaints but point to no facts from which one could reasonably draw that inference. Lane's prior conduct may have put the defendants on notice as to Lane's potential for misconduct, but it did not put them on notice with regard to these two plaintiffs.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved