UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Anthony Armstead                :
                                :
v.                              :   No. 3:01cv1489 (JBA)
                                :
The Stop & Shop Companies,      :
Inc., a/k/a The Stop & Shop     :
Supermarket Company             :

**RULING ON DEFENDANT'S MOTION TO DISMISS [# 34]**

Plaintiff Anthony Armstead filed this diversity action against his former employer, The Stop & Shop Companies, Inc. ("Stop & Shop"), alleging violations of the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"), and, under Connecticut common law, wrongful termination, breach of an implied covenant of good faith and fair dealing in an employment relationship, intentional infliction of emotional distress, and negligent infliction of emotional distress, all arising out of defendant's termination of plaintiff allegedly because of physical disability. The Court previously granted judgment to defendant on plaintiff's ADA and CFEPA claims. Defendant now moves to dismiss plaintiff's remaining causes of action under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendant's motion [Doc. #34] is GRANTED.

I. **Procedural Background and Allegations of Plaintiff's Second Amended Complaint**

By ruling issued April 19, 2002, the Court granted summary judgment to defendant on plaintiff's claims under the ADA and CFEPA, holding those claims untimely filed with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). See Armstead v. The Stop & Shop Cos., No. 3:01cv1489, 2002 WL 770732 (D. Conn. Apr. 19, 2002).

Armstead then filed his second amended complaint on May 21, 2002,[1] which included the following allegations: Armstead began working for Stop & Shop as a deli clerk in April or May of 1999. From roughly May to July of 2000, plaintiff took a medical leave of absence due to physical impairment. In July 2000, plaintiff submitted to Stop & Shop a doctor's note clearing him to return to work with bending and lifting restrictions. Defendant refused to accommodate plaintiff's restrictions although similar accommodations had been made for other employees, and would not permit plaintiff to return to work unless completely recovered. Plaintiff was constructively terminated on August 23, 2000, on account of

---

[1] The second amended complaint [Doc. #33] was filed after pre-motion conference presentation by defendant of the issues to be posed by its forthcoming motion to dismiss.

2

his physical condition after defendant refused to schedule work shifts for plaintiff. Defendant neither notified plaintiff of his termination nor provided plaintiff with a pink slip.

## II. Discussion

### A. Standard of Review and the Court's Prior Summary Judgment Ruling

"The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. ... Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations and citations omitted). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, consideration is not limited to the factual allegations in the complaint, which are generally accepted as true, but may also be given "to documents attached

to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken [under Fed. R. Evid. 201], or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film. Techs. Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991). Fed. R. Evid. 201 permits a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such facts include orders and judgments of and evidence presented to the court in the same proceedings. 1 Weinstein's Federal Evidence § 201.12[3] (2d ed. 2003); see Santibanez v. Wier McMahon & Co., 105 F.3d 234, 240 (5th Cir. 1997); Harris Custom Bulders Inc. v. Hoffmeyer, 834 F. Supp. 256, 261 (N.D. Ill. 1993)(considering evidence submitted on prior summary judgment motions in granting plaintiff's motion to dismiss made under Fed. R. Civ. P. 12(b)(6)).[2]

---

[2] See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 299 (2d ed. 1990)("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although ... items appearing in the record of the case ... also may be taken into account."); In re Natale, 136 B.R. 344, 349 (E.D.N.Y. 1992)("... all of which had previously been filed with this Court. It is true that in determining whether to grant a Rule 12(b)(6) motion, a court must focus on the allegations of the complaint. However, this principle surely does not

Accordingly, without converting defendant's motion to dismiss into a motion for summary judgment, the Court takes notice of the findings in its prior ruling on summary judgment in favor of defendant with respect to the timing and notice of plaintiff's termination, as such conclusions are implicated in the Court's decision to dismiss plaintiff's claim for negligent infliction of emotional distress.

### B.  Defendant's Motion to Dismiss

Defendant asserts two grounds for dismissing plaintiff's four remaining causes of action: 1) The Court lacks subject matter jurisdiction over plaintiff's claims because plaintiff failed to exhaust the grievance and arbitration provisions in a collective bargaining agreement allegedly governing the terms and conditions of plaintiff's employment with defendant; and 2) Each of the four remaining counts in plaintiff's second amended complaint fails to state a claim upon which relief can be granted.  The Court agrees with the latter and therefore does not reach the former basis for dismissal.

### C.  First and Second Counts: Wrongful Termination and

---

preclude a court in deciding a Rule 12(b)(6) motion from considering ... matters of public record such as orders or other items appearing in the record of a case.").

### Breach of Implied Covenant of Good Faith and Fair Dealing

The first and second counts of plaintiff's second amended complaint attempt to set forth common law claims for the tort of wrongful discharge and for breach of an implied covenant of good faith and fair dealing, alleging defendant wrongfully terminated plaintiff on account of physical disability after refusing to make reasonable accommodations in violation of important public policy. Both counts fail as a matter of law because plaintiff had available state and federal statutory remedies under the ADA and CFEPA to redress defendant's alleged misconduct and a claim for public policy wrongful discharge is only cognizable in the absence of such remedies.

Under Connecticut law, contracts of permanent employment or for an indefinite term are at-will relationships, see Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 158-59 (2000), and as such are generally "terminable by either the employee or the employer with impunity." Campbell v. Town of Plymouth, 74 Conn. App. 67, 74 (2002).[3] However, in Sheets v. Teddy's

---

[3] While defendant maintains that plaintiff's employment relationship with defendant was not at-will but controlled by a collective bargaining agreement, plaintiff's second amended complaint describes vaguely his association with defendant as an "employment relationship," "contract of employment", or "employment agreement" without any other clarification, or reference to any written contract or contract for a definite term of employment. See Pl.'s Second Am. Compl. ¶¶ 6, 20, 21 & 22. Consistent with his second amended complaint, plaintiff's opposition refutes for purposes of defendant's 12(b)(6) motion both the existence of any collective bargaining

Frosted Foods, Inc., 179 Conn. 471 (1980), the Connecticut Supreme Court recognized an exception to the "general rule allowing unfettered termination," Burnham, 252 Conn. at 159 (quoting Parsons v. United Techs. Corp., 243 Conn. 66, 79 (1997)) where the "employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets, 179 Conn. at 475. This type of termination in violation of public policy may be pursued as either a tort or contract action. See Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 572 (1984)("We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety ... derived from some important violation of public policy.... Whether a claim resulting from such a discharge is framed in tort or in

---

agreement binding on plaintiff, see e.g., Pl.'s Opp'n [Doc. #36] at 4-5, and plaintiff's membership in a union. See id. at 13 and n. 3. Therefore, for purposes of ruling on defendant's motion to dismiss, the Court accepts plaintiff's characterization of his employment as an at-will employer/employee relationship. See Morris v. Hartford Courant Co., 200 Conn. 676, 677 (1986)(construing complaint that did not allege an employment contract for a specified term as alleging an at will relationship). The intended construction of plaintiff's second amended complaint as an at-will relationship with defendant precludes the Court from determining that the collective bargaining agreement attached to defendant's motion is integral to the second amended complaint such as to justify consideration of the agreement in ruling on defendant's motion to dismiss. See Cortec Indus. v. Sum Holding, L.P., 949 F.2d 42, 46-48 (2d Cir. 1991).

7

contract should make no difference with respect to the issue of liability."(quotation omitted)); Carbone v. Atl. Richfield Co., 204 Conn. 460, 470-71 (1987); see also Battista v. United Illuminating Co., 10 Conn. App. 486, 495 (1987)("[At-will employee's cause of action for breach of implied covenant of good faith and fair dealing] is coterminous with, and extends no further than, a cause of action for wrongful discharge in tort.").

However, an action for wrongful discharge is unavailable to an at-will employee if there exists a statutory remedy under either federal or state law to redress the violation of public policy manifested by the employer's misconduct. See Burnham, 252 Conn. at 159-62; Atkins v. Brideport Hydraulic Co., 5 Conn. App. 643, 648 (1985). The statutory remedy bars the wrongful termination action whether or not a plaintiff has taken advantage of the existing statutory remedy, see Burnham, 252 Conn. at 159-62; see also Campbell, 74 Conn. App. at 73-74, or if the remedies provided by the statute are lesser or narrower than the remedies potentially available in the tort or contract action. See Burnham, 252 Conn. at 184-85.

Thus, a common law wrongful discharge (tort or contract) claim by an at-will employee asserting violation of public

8

policy against discrimination will be dismissed or stricken[4] upon a showing of the existence of statutory redress for the alleged discriminatory discharge under federal or state law. See e.g., Campbell, 74 Conn. App. at 71-77; Dallaire v. Litchfield Cty. Ass'n for Retarded Citizens, Inc., No. 3:00CV01144, 2001 WL 237213, at *3-4 (D. Conn. 2001)(remedies available under ADA and CFEPA); Friel v. St. Francis Hosp., No. CIV. 3:97-803, 1997 WL 694729 (D. Conn. Oct. 31, 1997)(remedies available under Title VII, ADA, and CFEPA).[5]

Plaintiff alleges that defendant discharged him in violation of the important public policy prohibiting discharge due to physical condition or disability articulated in the ADA and CFEPA. See Pl.'s Second Am. Compl. ¶¶ 10 & 17. As state and federal statutory schemes provide private rights of action to remedy discriminatory discharge based on physical disability, plaintiff's first and second counts must be

---

[4] "[M]otion to dismiss ... pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ... is similar to our motion to strike [which] permits a court to dismiss the complaint for failure to state a claim upon which relief can be granted." DeLaurentis v. City of New Haven, 220 Conn. 225, 239-40 (1991)(quotation omitted).

[5] See also Esdaile v. Hill Health Corp., No. CV980262401S, 2001 WL 1479115, at *2 (Conn. Super. Nov. 9, 2001)(federal and state statutory remedies available for age and disability discrimination); Knight v. S.E. Council on Alcoholism & Drug Dependency, No. 557182, 2001 WL 1231825, at *1-2 (Conn. Super. Sept. 24, 2001); Brightly v. Abbott Terrance Health Ctr., Inc., No. CV980148584S, 2001 WL 256228, at *3 (Conn. Super. Feb. 27, 2001); Hancock, 1998 WL 951019; Napoleon v. Xerox Corp., 656 F. Supp. 1120, 1125 (D. Conn. 1987); Snyder v. J.M. Ney Co., Civ. No. H-85-653, 1987 WL 14970, at *3 (D. Conn. Mar. 25, 1987).

dismissed, even though plaintiff cannot pursue these remedies because of plaintiff's untimely administrative filings. See Campbell, 74 Conn. App. at 76; Atkins, 5 Conn. App. at 646-48.[6]

### D.  Sixth Count: Intentional Infliction of Emotional Distress

The sixth count of plaintiff's second amended complaint claims intentional infliction of emotional distress, alleging that defendant engaged in extreme and outrageous conduct intended to inflict emotional distress on the plaintiff, and that such conduct actually did cause plaintiff to suffer severe emotional distress. The conduct plaintiff points to consisted of terminating him because of his physical condition; refusing to provide reasonable accommodation for lifting and bending restrictions; and failing and refusing to schedule plaintiff for work, notify him of his termination, and provide him with a pink slip in contravention of defendant's policy. See Pl.'s Second Am. Compl. at ¶ 45. Defendant asserts that the alleged conduct is not extreme and

---

[6] The Court notes that, if plaintiff were not an at-will employee and was protected by a collective bargaining contract, see supra at note 3, he would be precluded from maintaining the common law action for wrongful discharge recognized in Sheets and Magnan. See D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 212 n. 1 (1987); Magnan, 193 Conn. at 564-65; Sheets, 179 Conn. at 477; see also Wilhelm v. Sunrise N.E. Inc., 923 F. Supp. 330, 336 (D. Conn. 1995).

10

outrageous as a matter of law and must be dismissed. The Court agrees.

Under Connecticut law, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) defendant intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of defendant's conduct; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe. See Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). With respect to the second element, the court determines in the first instance the sufficiency of the conduct plaintiff alleges as constituting extreme and outrageous conduct. See id. (citing Bell v. Bd. of Educ., 55 Conn. App. 400, 410 (1999)); Campbell, 74 Conn. App. at 77-78.[7]

Extreme and outrageous conduct is defined as that which "exceeds all bounds usually tolerated by decent society." Appleton, 254 Conn. at 210 (quoting Peytan v. Ellis, 200 Conn. 243, 254 n. 5 (1986)).

---

[7] See also, Riley v. ITT Fed. Serv. Corp., No. Civ.A.3:99cv02362, 2001 WL 194067, at *5 (D. Conn. Feb. 22, 2001); Ericson v. City of Meriden, 113 F. Supp. 2d 276, 292 (D. Conn. 2000); Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 194-95 (D. Conn. 2000); White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998); Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 122-23 (D. Conn. 1998).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

Id. at 210-11 (quotation omitted).

Certain principles have emerged in the context of employer/employee relationships which guide the analysis. A court evaluates whether "...the employer's conduct, not the motive behind the conduct, [is] extreme or outrageous." Miner, 126 F. Supp. 2d at 195. Thus, claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is itself outrageous or extreme. See Campbell, 74 Conn. App. at 79 (quoting Parsons, 243 Conn. at 89)("'[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.'"); see e.g., Huff, 10 F. Supp. 2d at 123 (employee alleged refusal to hire based on race).

By contrast, one hallmark of a sufficiently stated claim for intentional infliction of emotional distress is allegation of repeated and public ridicule, especially with respect to racial discrimination. See Knight, 2001 WL 1231825 at *4

12

(citing cases); see also Campbell, 74 Conn. App. at 79 ("In cases in which plaintiffs have pleaded emotional distress and avoided a motion to strike, there often has been some element of public ridicule.").

Applying those principles, plaintiff could prove no set of facts to support his claim of extreme and outrageous conduct such that he would be entitled to relief for intentional infliction of emotional distress. Defendant's motivation for terminating plaintiff is not relevant, and the termination in and of itself cannot constitute extreme and outrageous behavior. Failure to accommodate plaintiff's disability and refusal to communicate openly with plaintiff regarding his employment status do not rise to the level of exceeding all bounds usually tolerated by decent society. Accordingly, count six of plaintiff's second amended complaint for intentional infliction of emotional distress is dismissed.

    E.   **Fifth Count: Negligent Infliction of Emotional Distress**

The fifth count of negligent infliction of emotional distress alleges the same conduct that supports plaintiff's claim for intentional infliction of emotional distress. See supra at p. 10; see also Pl.'s Second Am. Compl. ¶ 48. This claim must be dismissed because, as a matter of law, such

13

allegations, when considered in light of the Court's prior findings, cannot support a finding that defendant acted unreasonably in the termination process.

Under Connecticut law, to prevail on a claim for negligent infliction of emotional distress, a plaintiff must prove that defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if caused, might result in illness or bodily harm. See Parsons, 243 Conn. at 88; Morris, 200 Conn. at 683-84. In first recognizing the cause of action, the Connecticut Supreme Court cautioned that the tort should "be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978)(quotation omitted).

In the employment context, a claim of negligent infliction of emotional distress cannot be predicated on actions or omissions of employees occurring within the context of a continuing employment relationship, see Perodeau v. City of Hartford, 259 Conn. 729, 744-63 (2002), but "arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.'" Parsons, 243 Conn. at 88

14

(quoting Morris, 200 Conn. at 682). Although there are not precise contours of what "unreasonable conduct" includes, wrongfully motivated termination of employment is clearly excluded. See id. at 88-89. Conduct which gives rise to liability during the termination process is limited to that which is "sufficiently wrongful" and "particularly egregious." Perodeau, 259 Conn. at 751 & 755. Mere inconsiderate or precipitous conduct may not suffice. See e.g., Parsons, 243 Conn. at 88-89 (affirming striking of claim where employee was terminated within two hours of refusing to travel to international work site and removed from employer's building under security escort); Saloomey v. A Child's Garden, Inc., No. 324092, 1996 WL 278252, at * 5 (Conn. Super. April 29, 1996)(striking claim where employee ordered to remove personal belonging and simultaneously questioned about stealing).[8]

Plaintiff's claim must be dismissed for failure to state a cause of action. Other than conclusory characterizations ("demeaning, derogatory, and inhumane"), most of plaintiff's allegations do not describe conduct occurring during the termination process but rather describe defendant's underlying motivation (discriminatory discharge based on physical

---

[8] See also Esdaile, 2001 WL 1479115 at *4-5; Thompson v. Bridgeport Hosp., No. CV 98352686, 2001 WL 823130, at *7-8 (Conn. Super. June 22, 2001); Riley, 2001 WL 194067 at *6; Belanger, 25 F. Supp. 2d at 84-85.

15

disability) or relate to pre-termination conduct (refusal to provide reasonable accommodations). Failure by defendant to provide plaintiff with a pink slip in violation of defendant's own policy can cause no ill to befall plaintiff since, under state regulations, plaintiff's inability to collect unemployment benefits is not impaired.[9] Thus, such omission carries no unreasonable risk of causing emotional distress.

Plaintiff's remaining allegations allege, in essence, that defendant ignored him and did not notify him that he was terminated, and, as a result, constructively discharged him on August 23, 2000 by refusing to schedule him for work shifts over the preceding month and a half. However, as previously determined, plaintiff in fact was terminated on July 23, 2000, or was at least notified of his termination status by the following day. See Armstead, 2002 WL 770732 at *2 & 4. There is no allegation that defendant's conduct was public or particularly humiliating for plaintiff beyond the normal range of discomfort and enmity that generally are associated with an

---

[9] "[W]here the individual alleging lack of work acknowledges that he was not given an unemployment notice ... by his employer upon separation," the administrator [dealing with unemployment compensation] "shall promptly transmit [a lack of work separation verification form] to the employer," advising the employer that "no action is required by the employer if the employer agrees with the individual's statement." Conn. Agencies Regs. § 31-222-9(3)(A) & (C)(ii). "If the employer fails to respond ... within seven ... days, benefits may be paid based upon the information provided by the individual." Id. at (3)(E).

involuntary termination. Thus, the Court finds that, as a matter of law, plaintiff has failed to state a claim constituting unreasonable or "egregious conduct involving a termination." Perodeau, 259 Conn. at 755. Accordingly, the fifth count of plaintiff's second amended complaint is dismissed.

III.     Conclusion

For the foregoing reasons, defendant's motion to dismiss [Doc. #34] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

_____

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 17th day of March, 2003.**