UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT L. SCHUG,
    Plaintiff,
                              :

v.                                  :      Civil Action No. 3:99CV1493(CFD)

THE PYNE-DAVIDSON CO.
    Defendants.                       :

## RULING ON MOTION FOR SUMMARY JUDGMENT

I.     Introduction

Plaintiff Robert L. Schug ("Schug") claims that his former employer, The Pyne-Davidson Company ("Pyne-Davidson"), unlawfully discriminated against him on the basis of his age in terminating his employment. He filed the instant action against Pyne-Davidson pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and also alleged intentional and negligent infliction of emotional distress under Connecticut law.[1] Pyne-Davidson has asserted various special defenses, as well as a common law counterclaim of vexatious litigation. Pending is Pyne-Davidson's Motion for Summary Judgment [Doc. # 20]. For the following reasons, the motion is GRANTED IN PART, DENIED IN PART.

II.    Background[2]

Pyne-Davidson is a printing company that employs approximately 25 individuals. Since

---

[1] Jurisdiction over Count I under the ADEA is pursuant to 28 U.S.C. § 1331, and jurisdiction over the emotional distress claims in Counts II and III is based on supplemental jurisdiction.

[2] The recited facts are taken from the Pyne-Davidson's Local Rule 9(c)(1) statement and the materials appended thereto. Schug's Local Rule 9(c)(2) statement admits all of the facts that the defendant listed as undisputed, but includes several disputed issues of fact not mentioned by Pyne-Davidson. The facts contained in the background section are undisputed unless noted.

EXHIBIT K

1977, Schug had been employed by Pyne-Davidson in various capacities. Harry Davidson, who hired Schug, was the president of Pyne-Davidson at all times relevant to the complaint. His son Daniel Davidson was the company's vice-president during the same period and was responsible for the day-to-day operations of the company. Schug did not have a formal employment contract at Pyne-Davidson.

Schug had been trained at the Hartford Trade School in Connecticut and at Art Center in Los Angeles, California. He also received on-the-job training as a printer and lithographer while serving in the United States Air Force. He worked for several printing companies from the time he was discharged from the Air Force until 1977, when he began his employment at Pyne-Davidson. Schug worked in the "prep" room at Pyne-Davidson.

Schug had a history of disputes with co-workers over the quality of his work, and with Daniel Davidson about various issues.[3] For instance, Schug argued with Patricia Klonoski ("Klonoski"), the quality control manager from late 1997 until early 1998. There also was tension between Schug and Linda Gilbert ("Gilbert"), the quality control manager who replaced Klonoski. Gilbert claims that Schug refused to correct his mistakes, and responded aggressively to her comments and requests to redo the work, which made her feel threatened and harassed. Gilbert notified Daniel Davidson, who, in the course of a heated argument with Schug, told him to be more polite to Gilbert. Schug denies arguing with Gilbert, and maintains that Gilbert's inexperience in the printing industry was the reason for the problem. In May 1998, Gilbert

---

[3]In 1996, Schug took over the "complicated projects" in the prep room, and according to the defendant, he apparently had difficulty doing so. According to Daniel Davidson, from 1996 until the time of Schug's termination, he spoke with Schug on a weekly basis about his job performance or his inability to work with others.

informed Davidson that she intended to file a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") because of Schug's behavior, and Davidson spoke with Schug about the potential complaint. Gilbert claims that after she mentioned the possible complaint, Schug started a false rumor that she was having an affair with a coworker.[4] Schug denies this. Pyne-Davidson did not keep any records concerning these work performance issues.

Daniel Davidson terminated the plaintiff's employment on May 22, 1998, in Harry Davidson's presence. Harry Davidson states in his affidavit that he and his son jointly decided to terminate the plaintiff. Schug was 67 years old at the time. The meeting in which his employment was terminated occurred on a Friday; the only people in the building were the two Davidsons and the plaintiff. There was very little conversation during the meeting. The defendant claims to have terminated Schug because of his poor work quality, and his refusal to improve his work or his treatment of co-employees. Schug shook hands with Harry Davidson during the meeting, after he had been informed of his termination.

The plaintiff claims that he was fired because of his age.[5] As evidence, he points–in part– to statements allegedly made by Daniel Davidson in the months leading up to his discharge. For example, in early 1998, when Schug and Daniel Davison were alone in the shop one evening, Schug claims that Daniel Davidson told him, "Why don't you get out of this shop? You've been living off my family long enough." Schug claims that Davidson said this again later in the year.

---

[4]The company apparently failed to keep records of employee complaints. Pyne-Davidson also does not have an employee manual.

[5]MacElroy's affidavit indicates that other employees, including himself, would joke with Schug about the fact that Schug was significantly older than they were. Despite this evidence, Schug does not appear to be claiming discrimination based on a hostile work environment.

3

He also claims that "[t]here were times when he suggested I was too old to do my job," particularly when an employee complained about his work. In March 1998, during a meeting with Martin Coursey ("Coursey"), the company's investment broker, Daniel Davidson allegedly told Schug, "Why don't you cash in those funds and retire, spend some money?" Coursey states in an affidavit that he never heard the remark about retirement, and Daniel Davidson denies that he made age-related statements to Schug at any time. However, Raymond MacElroy, another prep room employee, claims that he heard Davidson make some of these remarks. He stated in his deposition that he heard Daniel Davidson ask Schug "why he didn't just retire and stuff like that," and say that he considered Schug to be "living off his family." MacElroy also stated that he heard Daniel Davidson tell Schug to "Live off the money you have now. Cash in your stocks." While MacElroy could not state whether he though Schug was treated differently because of his age, he stated that "[Schug's] age was brought up enough so that I can remember clearly it happened."

In 1997, Schug claims that there was only one Pyne-Davidson employee who was more than forty years old, though he admits some of the company's current employees fall into that category. One employee–Art Viterito–worked at Pyne-Davidson during the 1990s while he was in his 70s.

On at least one occasion, Schug told Daniel Davidson that he would file an age discrimination suit if he were fired. Following his termination, Schug filed administrative claims with the CCHRO and the Equal Employment Opportunity Commission ("EEOC"). The CCHRO case was dismissed on May 11, 1999; the EEOC case adopted the CCHRO's findings and dismissed its case on September 29, 1999.

III.    Standard

4

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.'" Miner v. City of Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). Additionally "where . . . the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999) (citing Celotex, 477 U.S. at 323-24 and Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998)).

IV.    Discussion

5

A.    Applicable law

Under the ADEA, it is "unlawful for any employer . . . to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The

standard for establishing a prima facie case of discrimination under Title VII of the Civil Rights

Act of 1962, 42 U.S.C. §§ et seq., see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),

applies to ADEA claims as well." Roge v. NYP Holdings, Inc., 257 F.3d 164, 167 (2d Cir.

2001). A plaintiff first must establish a prima facie case by showing that: (1) at the relevant time

he belonged to a protected class; (2) he was qualified for the job; (3) he suffered an adverse

employment action; and (4) the adverse employment action occurred under circumstances giving

rise to an inference of discrimination based on his membership in the protected class. Id. "The

burden of establishing a prima facie case is not a heavy one. One might characterize it as

minimal." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.2000).

> Since the court, in deciding a motion for summary judgment, is not to resolve
> issues of fact, its determination of whether the circumstances give rise to an
> inference of discrimination must be a determination of whether the proffered
> admissible evidence shows circumstances that would be sufficient to permit a
> rational finder of fact to infer a discriminatory motive. It is not the province of the
> summary judgment court itself to decide what inferences should be drawn.

Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994) (quotation omitted).

Once a prima facie case has been made, a presumption of discrimination arises, and the

employer has the burden of proffering a nondiscriminatory reason for the adverse employment

action. Roge, 257 F.3d at 168. If this is done, the McDonnell-Douglas presumption of

discrimination drops out, and the plaintiff has the burden to prove that the reasons offered by the

6

employer were not true reasons, but were a pretext for discrimination. Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S.133, 143 (2000); Roge, 257 F.3d at 167. At that stage, "the

governing standard is whether the particular evidence, taken as a whole, is sufficient to support a

reasonable inference that prohibited discrimination occurred." James v. New York Racing Ass'n,

233 F.3d 149, 156-57 (2d Cir. 2000).

Thus, the plaintiff must "establish a genuine issue of material fact either through direct,

statistical or circumstantial evidence as to whether the employer's reason for discharging her is

false and as to whether it is more likely that a discriminatory reason motivated the employer to

make the adverse employment decision." Gallo v. Prudential Residential Services Ltd.,

Partnership, 22 F.3d 1219, 1225 (2d Cir.1994). The factors to consider include the strength of

plaintiff's prima facie case, the probative value of the proof that the employer's explanation is

false, and other evidence that supports or undermines the employer's case. James, 233 F.3d at

156-57 (quoting Reeves, 530 U.S. at 148).

B.     Prima facie case

The defendant concedes that the plaintiff suffered an adverse action and that he belonged

to a protected class at the relevant time. See 29 U.S.C. § 631(a). Pyne-Davidson argues,

however, that Schug has not established that he was performing his duties satisfactorily and that

the adverse employment action occurred under circumstances giving rise to an inference of

discrimination.

The standard under the second prong of the prima facie case is whether the employee was

qualified to do his job, not whether he was satisfactorily performing it. Slattery v. Swiss

Reinsurance Co., 248 F.3d 87, 92 (2d Cir. 2001). "[T]he qualification necessary to shift the

7

burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show

only that he possesses the basic skills necessary for performance of the job." Id. (quotation

omitted). The inference of minimal job performance is not difficult to draw, particularly when the

same individual hired and fired the employee. Id. Here, the evidence is undisputed that Schug

had substantial training in his trade, had forty years experience, and most important, had been

employed by the defendant for twenty-one years. Further, although Daniel Davidson apparently

took the most active role in the decision to fire Schug, Harry Davidson, who originally hired the

plaintiff, was present during his termination and this fact is due some weight. While Daniel

Davidson in his affidavit details Schug's poor work performance, particularly after Daniel

Kachnowski left the prep room,[6] the burden of satisfying the prima facie case is minimal, and

based on this standard, the plaintiff's showing is sufficient.

As to the evidence of the circumstances giving rise to an inference of discrimination,

Schug also has made a sufficient showing for the purposes of satisfying this element of the prima

facie case, though the prima facie case is weak.[7] He has presented evidence that Daniel Davidson

made certain remarks that could be interpreted as age-related. In particular, he claims that Daniel

Davidson told him, "Why don't you get out of this shop? You've been living off my family long

enough" and asked him, "Why don't you cash in those funds and retire, spend some money?"

One of Schug's co-workers, Mr. MacElroy, states in his deposition that he overheard some of

---

[6]MacElroy also suggests in his deposition that Schug was not as productive as he was. This does not necessarily suggest, however, that Schug was not qualified to do his job.

[7]According to Daniel Davidson, the individuals who currently hold Schug's position are ages 36 and 56. At his deposition, Schug stated that one person, Miroslaw Wolcvak, replaced him.

these comments. While Daniel Davidson, as well as the investment broker who was present when

one of the comments was allegedly made, denies that he made any age-related remarks, he does

not specifically deny making the statements attributed to him.[8] Further, the plaintiff stated in his

deposition that "there were times when [Davidson] suggested I was too old to do my job."

Schug. Dep. at 4.

Although "stray remarks" by a decision maker, without more, cannot prove a claim of

employment discrimination, when "other indicia of discrimination are properly presented, the

remarks no longer can be deemed 'stray,' and the jury has a right to conclude that they bear a

more ominous significance." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d

Cir.2001) (quoting Danzer v. Norden Systems, 151 F.3d 50, 56 (2d Cir. 1998) (concluding that

comments that an older work force was "contaminated" and were "Bad Apples," against the

backdrop of the company's "all-consuming interest" in the age and projected retirement rates of

the work force, raised an inference of age discrimination). Certainly, comments concerning

retirement can be made without suggesting age discrimination. However, like any remarks, they

must be viewed in context, along with the specific language used and the number of times the

comments were made. At some point, such as here, they cross the line from constituting "stray

remarks" to, when considered with other evidence, giving rise to an inference of discrimination

for the purpose of the McDonnell-Douglas test.

In addition to the alleged comments made by Daniel Davidson, Schug states in his

---

[8]The Court notes that it is not resolving factual disputes here; it merely points out that Daniel Davidson did not actually deny making the statements at issue. While it is not clear that those comments were age-related, a reasonable jury could interpret them as such. Further, the Court does not determine whether the comments were actually made–that is for a jury to decide.

deposition that he was significantly older–by twenty years–than any other employee at Pyne-Davidson at the time of his termination except for the company's president, Harry Davidson.[9] At the same time, however, Harry Davidson claims to have been involved in the decision to terminate Schug.[10] While a close call, these circumstances would be sufficient to permit a rational finder of fact to infer a discriminatory motive. See Chambers, 43 F.3d at 38. Thus, Schug has put forth the minimal proof necessary to support an inference of discrimination, and to satisfy the prima facie case for discrimination.

C.     Legitimate non-discriminatory reason and pretext

Pyne-Davidson has put forward legitimate, non-discriminatory reasons for the termination of his employment: the poor quality of his work and his treatment of his co-workers, particularly Ms. Gilbert. These reasons, if true, "would permit the conclusion that there was a nondiscriminatory reason for the discharge." Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) (quoting Carlton, 202 F.3d at 136)). Thus, the burden shifts back to Schug to produce evidence "for a reasonable jury to conclude that [the defendant] discriminated against him because of his age." Id. (quotation omitted). The plaintiff argues that Pyne-Davidson's reasons were untrue and pretextual. He states in his deposition that while he was not always polite to Gilbert,

---

[9]Daniel Davidson maintains that at the time of Schug's termination, 50 percent of Pyne-Davidson's employees were over 40. The Court notes that this statement does not necessarily contradict Schug's statement that he was more than twenty years older than any other employee, except for Harry Davidson, at the time of his termination, as he was 67 years old when he was discharged.

[10]When the same actor hires a person already within the protected class, and then later fires that same person, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir.1997).

10

he did not start the false rumor concerning her. He also maintains that the atmosphere in the shop was such that employees often argued with one another–a practice he claims begun by the Davidsons themselves. Finally, he notes that Gilbert left Pyne-Davidson shortly after Schug's termination, and argues that a reasonable jury could infer that Schug was not "the cause of Ms. Gilbert's problems" if she left so soon after his own departure.

As to the defendant's contention that his work quality was poor, he points to his twenty-one years of employment and maintains that the fact that he received annual salary increases, as well as four weeks of vacation time, demonstrates that his performance was adequate. He also states that Gilbert's inexperience in the printing business was the reason for her complaints about Schug's work, not quality concerns.

Finally, Schug has produced the evidence that can be used to support his prima facie case: Daniel Davidson's allegedly age-related comments and the composition of the workforce at Pyne-Davidson.

In <u>Reeves</u>, the Supreme Court explained,

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review . . ., and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact.

<u>Reeves</u>, 232 F.3d at 148. Here, the plaintiff has established a prima facie case and has set forth evidence to rebut the defendant's explanation. Although the Court concludes that the plaintiff has

11

created only a weak issue of fact as to whether the employer's reasons were untrue, there is not "abundant and uncontroverted evidence" that no discrimination has occurred. Further, there are still factual issues as to what, if any, age-related comments were made to Schug, and whether Daniel Davidson's statements could be interpreted as being age-related. There are also issues of fact relating to the plaintiff's performance at work. Thus, a reasonable jury could conclude that Pyne-Davidson discriminated against the defendant in terminating him. Accordingly, Pyne-Davidson's motion for summary judgment is denied on that basis.

D.      Emotional distress claims

1.      Intentional infliction of emotional distress

In order for the plaintiff to prove his claim of intentional infliction of emotional distress he must establish four elements: (1) that the defendants intended to inflict emotional distress; or that they knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. See Petyan v. Ellis, 510 A.2d 1337, 1342 (Conn. 1986). "The 'extreme and outrageous' standard is a high one: 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Reed v. Town of Branford, 949 F. Supp. 87, 91 (D. Conn. 1996) (quoting Restatement (Second) of Torts §46, comment d (1965)). The question whether the defendant's conduct rises to the level of extreme and outrageous conduct is to be determined by the Court in the first instance. Reed, 949 F. Supp. at 91.

Here, even if the evidence presented by the plaintiff is accurate, it does not satisfy the

12

standard for a claim of intentional infliction of emotional distress. The defendant maintains that "where a life-long employee is uncermoniously fired from his lifelong profession simply because he is too old, such conduct is extreme and outrageous." While such behavior, if true, would indeed be unfortunate, and perhaps actionable under other causes of action, the Court cannot conclude that it "go[es] beyond all possible bounds of decency . . . to be regarded as atrocious and utterly intolerable in a civilized community." Reed, 949 F. Supp. at 91. "The mere fact of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. Technologies Corp., 700 A.2d 655, 667 (1997) (citation omitted); see also Dixon v. Yale Univ., 1999 WL 639861, at *3 (holding that failing to offer the plaintiff a full-time position because of his age was not extreme and outrageous). Therefore, the defendant's motion for summary judgment on this basis is GRANTED as to this count.

2.    Negligent infliction of emotional distress

In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct in the termination process. Parsons, 700 A.2d at 667 (quoting Morris v. Hartford Courant Co., 513 A.2d 66, 69 (Conn. 1986))); see also Belanger v. Commerce Clearing House, 25 F. Supp. 2d 83, 84 (D. Conn. 1998). However, the Second Circuit, in dictum, has stated that it is unclear whether the Connecticut Supreme Court would continue to limit the tort of negligent infliction of emotional distress to actions taken in the course of an employee's termination. Malik v. Carrier Corp., 202 F.3d 97, 103-04 n. 1 (2d Cir.2000); see also Karanda v. Pratt & Whitney Aircraft, No. CV-98-582025S, 1999 WL 329703, at *5 (Conn. Super. Ct. May 10, 1999), criticized by Dorlette v. Harborside Healthcare Corp., No. CV 990266417, 1999 WL 639915, at *3 (Conn. Super. Ct.

13

Aug. 9, 1999). Nevertheless, it appears that most Connecticut courts continue to adhere to the ruling limiting negligent infliction of emotional distress claims to conduct arising in the termination process, and the Connecticut Supreme Court has not changed the approach of Parsons. See Franco v. Yale University, 161 F. Supp. 2d 133, 140 (D. Conn. 2001) (citing cases). Thus, this Court will follow the Parsons standard. However, the plaintiff appears to also argue that the termination itself was an action that caused emotional harm to the plaintiff.

In order to sustain a claim of negligent infliction of emotional distress in this setting, Schug must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner." Belanger, 25 F. Supp. 2d at 84-85 (quoting Lund v. Stern & Co., No. CV-94-0463413, 1995 WL 216846, at *1 (Conn. Super. Ct. April 4, 1995)). A plaintiff cannot base such a claim on the fact of termination alone, even if that termination was wrongful. See Parsons, 700 A.2d at 667; Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 124 (D. Conn. 1998). Thus, in evaluating the plaintiff's claims, the Court first must determine whether he has presented evidence (1) that his employer engaged in unreasonable conduct, that is, conduct which was "inconsiderate" or intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process. See id.

Schug maintains that "the discriminatory termination of employment in violation of federal law constitutes such unreasonable conduct." However, without any allegations of unreasonable conduct in the termination process, termination of employment, even if based on age discrimination, is not sufficient by itself to sustain a claim of negligent infliction of emotional distress. See Giordano v. Gerber Scientific Prods., Inc., No. 3:99CV00712 (EBB), 1999 WL 1067820, at *2 (D. Conn. Nov. 5, 1999). Therefore, the defendant's motion for summary

14

judgment is also GRANTED as to this count.

      E.     <u>Vexatious litigation</u>

The defendant' vexatious litigation counterclaim is based on the plaintiff's CCHRO and

EEOC complaints, and apparently also on the instant action.  The elements of a claim of vexatious

litigation are: (1) the defendant initiated legal process against the claimant; (2) the proceedings

terminated in favor of the claimant; (3) the defendant acted without probable cause; and (4) the

defendant acted with malice.  <u>See</u> <u>Fink v. Magner</u>, 988 F. Supp. 74, 82 (D. Conn. 1997); <u>see also</u>

<u>DeLaurentis v. New Haven</u>, 597 A.2d 807, 819 (Conn. 1991).  Schug argues that these claims

lack merit because he has probable cause to bring his claims, and the Court notes that there also

are significant questions as whether the actions at issue have terminated in the defendant's favor.

However, the plaintiff has not moved for summary judgment.  Therefore, the counterclaim will

remain and the defendant's motion for summary judgment is denied.

V.     <u>Conclusion</u>

For the foregoing reasons, Pyne-Davidson's motion for summary judgment [Doc. # 20] is

GRANTED IN PART, DENIED IN PART.  The remaining claim of the plaintiff is under the

ADEA; the remaining claim of the defendant alleges vexatious litigation.  Judgment shall enter for

the defendant on the plaintiff's claims for intentional and negligent infliction of emotional distress.

      SO ORDERED this ____ day of December 2001, at Hartford, Connecticut.


                                          _____/S/_____
                                          Christopher F. Droney
                                          United States District Judge