UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 OCT 29  A 9: 16

U.S. DISTRICT COURT

| | | |
|---|---|---|
| RICHARD MALLETT,<br>PLAINTIFF | : | CIVIL ACTION NO.<br>3:01-CV-1137 (AHN) |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF PLAINVILLE, ET AL<br>DEFENDANTS | : | OCTOBER 28, 2004 |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, BUTCH PARADIS, STEVEN CLARK AND AFSCME LOCAL 1303-56 MOTION FOR SUMMARY JUDGMENT

The Defendants, Butch Paradis, Steven Clark and AFSCME Local 1303-56, [hereinafter collectively, "the Union Defendants"] hereby submit this Memorandum of Law in support of their Motion for Summary Judgment as to the First, Second, Fourth, Fifth, Seventh and Eighth Counts of Plaintiff's Complaint dated June 19, 2001.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2001, the Plaintiff, Richard Mallett, filed a complaint seeking to recover damages from his former employer, the Town of Plainville and several individual town employees. The complaint also sought to recover damages from AFSCME Local 1303-56, Butch Paradis, former AFSCME Local 1303-56 president, and Steven Clark, current president of AFSCME Local 1303-56 at the time of the alleged acts.

In the First Count the Plaintiff alleges that the Union Defendants violated Plaintiff's constitutional rights by engaging in conduct including harassment, defamation and retaliation, and failing to fully investigate his complaints. In the Second Count the Plaintiff alleges that the Union Defendants violated his Fourteenth Amendment right to due process by carrying out a pattern of outrageous conduct including harassment and failing to adequately act upon the Plaintiff's

1

complaints. In the Fourth Count, the Plaintiff alleges that AFSCME Local 1303-56 breached its

duty of fair representation by failing to provide a proper forum for the adjudication of grievances.

In Count Five, the Plaintiff alleges threatening, harassment and intimidation in violation of Conn.

Gen. Stat. §§53a-62 and 46a-71. In Count Seven, the Plaintiff sets forth a common law tort claim

of assault, and in Count Eight, a common law tort claim of intentional infliction of emotional

distress.

The Plaintiff's complaint is based on conduct by co-workers which occurred during the

Plaintiff's employment with the Town of Plainville. Such employment began in March of 1990.

*See* Plaintiff's 7/20/04 Deposition Transcript, p. 27, **Exhibit A**. The Plaintiff worked as an

Operator One in the Water Pollution Control Department. *See* Plaintiff's 12/4/01 Deposition

Transcript, p. 26, **Exhibit B**. The Town of Plainville and AFSCME, Local 1303-56 entered into a

collective bargaining agreement that recognized the Union as the exclusive bargaining agent for the

employees of the Town of Plainville. *See* Plaintiff's Complaint, Count Four, ¶83; and Collective

Bargaining Agreement, **Exhibit C**. The Collective Bargaining Agreement sets forth the procedure

for a four step grievance process and binding arbitration. *See* **Exhibit C**, Article XIII, §13.0.

Pursuant to the terms of the Agreement, the decision of the arbitrator "shall be final and binding on

both parties." *See* **Exhibit C**, Article XIII, §13.0(E).

During the first two years of Mr. Mallett's employment at the Plainville Water Pollution

Control, Donald Becker, a co-worker who was at one time president of the Union, began criticizing

Mallett's work performance. *See* **Exhibit A**, pp. 8-9, 40; **Exhibit B**, p.41-42. Becker did not have

any supervisory authority over Mallett. *See* **Exhibit B**, p.27. Mallett states that Becker was not

nice and spoke to him and other employees in an inappropriate manner. *See* **Exhibit B**, p. 43. In

June of 1991, Becker said, "my way or the highway" and "if you don't like it, here is the gate." *See*

**Exhibit B**, p. 44. Mallett testified that he does not recall how many times he actually talked to Becker about the problems he was experiencing in the workplace. *See* **Exhibit A**, p. 11.

Mallett argues that another co-worker, James Kaine, an Operator at the Plainville Water Pollution Control Authority, also began to criticize his work. *See* **Exhibit B**, p. 48. However, Mallett only identified one incident of criticism from Kaine taking place in July of 1992. *See* **Exhibit B**, p.49. Mallett testified that at one time, Kaine held the positions of union steward and vice-president. *See* **Exhibit A**, p. 8. Mallett does not recall the dates when Kaine held such positions. *See* **Exhibit A**, p.8.

On June 16, 1993, Mallett observed on a bulletin board a picture of a "Frankenstein likeness." *See* **Exhibit A**, p.14. Mallett testified that he believed the picture referred to him and his wife because of certain details in the picture, including a scar on the figures arm. *See* **Exhibit A**, p.14-15. Mallett testified that he believed Becker was responsible for the picture. *See* **Exhibit A**, pp. 14-16, 171-73.

Another incident occurred on July 13, 1993. *See* **Exhibit A**, p. 169. Mallett was delivering a bundle of rags. *See* **Exhibit A**, p.17. Becker was standing in the doorway. *See* **Exhibit A**, p.17. Mallett said, "I don't want to hit you." *See* **Exhibit A**, p.17. Becker said, "You're fucking right you don't want to hit me with that bundle of rags, you fucking queer." *See* **Exhibit A**, p.17.

On or about July 20, 1993, Becker rode by in a truck and allegedly said to Mallett, "fuck you, asshole." *See* **Exhibit A**, p.170. On or about the same time, Becker whispered baby noises into Mallett's ear, while Kaine laughed. *See* **Exhibit B**, p.60-61. Mallett also contends that in the same year Becker also called him a "fat ass." *See* **Exhibit A**, p.169-70.

Also in 1993, during the investigation of a claim of sexual harassment by a co-employee against Becker, Mallett was interviewed by John Bohenko, Town Manager. *See* **Exhibit A**, p.47

3

and **Exhibit B**, p.61.  During the interview, Mallett complained about Becker's conduct towards

him.  *See* **Exhibit A**, p.48-49.  Mallett testified that Becker was suspended for three days for

harassing the co-employee and himself.  *See* **Exhibit B**, p.63-64.  Mallett did not file any

grievances against specific individuals.  *See* **Exhibit A**, pp. 20-22, 53-54, 177.

In Plaintiff's Complaint, ¶ 33, Mallett states that he filed a grievance on May 13, 1994

against Becker for posting harassing messages.  *See* **Exhibit A**, p. 18.  However, Mallett testified

that he does not have a copy of the grievance.  *See* **Exhibit A**, p.18.  Mallett was also unable to

state any facts on which he bases his statement that Union president, Butch Paradis, knew of the

activity against Mallett, but failed to take action on it.  *See* **Exhibit A**, pp. 18-19.

Mallett's deposition testimony is also inconsistant with the Complaint regarding whether he

filed a grievance against Kaine as to misuse of town property and keeping a pit bull at the Plainville

Water Pollution Control.  *See* **Exhibit A**, pp. 21-22.  Despite the fact that Plaintiff's Complaint at

¶34 states that numerous grievances were filed against Kaine, Mallett testified that he does not

recall filing specific grievances against Kaine or filing any grievance as to misuse of town property.

*See* **Exhibit A**, pp. 21-22.

Plaintiff also alleges in his Complaint at ¶34 that Defendant Paradis was aware of such

activity as maintaining a pit bull at the Water Pollution Control, and that he failed to take action.

*See* **Exhibit A**, pp. 22-23.  However, Mallett testified that he does not recall on what he bases such

assertion.  *See* **Exhibit A**, pp. 22-23.

In November of 1999, Kaine assigned Mallett to work in "Siberia" for a four month period.

*See* **Exhibit B**, pp.84-85.  "Siberia" is an isolated facility away from the main plant and manned by

one person.  *See* **Exhibit A**, pp.14, 35.  Mallett did not complain about the assignment.  *See*

**Exhibit A**, p.38.  Mallett stated that he believes Kaine assigned him to "Siberia" to remove him from the hostility at the main plant.  *See* **Exhibit B**, p.85.

Plaintiff also alleges that on November 30, 1999, he did not attend a union meeting due to commitments with his part-time job.  *See* **Exhibit B**, p.87.  On December 14, 1999, Kaine allegedly attempted to provoke Mallett into a physical altercation by calling him "a piece of shit" and "a coward" for not attending the union meeting.  *See* **Exhibit B**, pp.88-89.  According to Mallett, Kaine puffed out his chest, clenched his fist in a "boxing" position, showed a rage in his eye, and said "come on."  *See* **Exhibit A**, pp. 105-06, 152-53 and **Exhibit B**, p. 90.  Eventually, Kaine walked away and Mallett was able to return to work.  *See* **Exhibit B**, p. 89.  Mallett did not report the altercation.  *See* **Exhibit B**, p. 90-91.

During this time, a memorandum was circulating the facility challenging a union election.  *See* **Exhibit A**, p. 182 and **Exhibit B** pp 124-25.  Mallett refused to sign the memorandum.  *See* **Exhibit A**, pp. 182-83.  Shortly thereafter, Mallett's time card was placed at the bottom of the time card slot.  *See* **Exhibit A**, p. 182 and **Exhibit B** pp 124-25.  Mallett stated at his deposition that he believes Becker was responsible for the moving of his time card.  *See* **Exhibit A**, pp. 182-83; **Exhibit B**, pp. 124-25.

Another altercation took place on June 23, 2000, when Mallett failed to report to a job assignment.  *See* **Exhibit B** p. 91.  Kaine was upset with Mallett.  *See* **Exhibit B**, p.91.  Mallett explained that he had misunderstood the assignment, while Kaine said, "if you mess with me, I'll mess with you."  *See* **Exhibit B**, pp. 91-92.  According to Mallett, Kaine also said, "You're never going anywhere in this department."  *See* **Exhibit B**, pp. 91, 118.  Again, Mallett did not report such incident.  *See* **Exhibit A**, p. 168.

On August 25, 2000, Mallett was accused of leaking information to a Town resident regarding time card abuses. *See* **Exhibit B**, p.96-98.  Mallett admits to speaking with his neighbor about time card abuses within the Plainville Water Pollution Control. *See* **Exhibit B**, p.96.  During a crew meeting, Becker threatened to take legal action against Mallett for such discussions with his neighbor. *See* **Exhibit A**, p.115.

In February of 2001, Mallett and Michael Conklin had an altercation. *See* **Exhibit A**, pp.12-13 and **Exhibit B**, pp. 108-09.  Conklin was a co-employee who held the position of Operator. *See* **Exhibit A**, p. 10.  Mallett testified that Conklin held the position of union steward at one time, but could not recall the exact time period. *See* **Exhibit A**, p. 10.  Mallett was sitting in the break room when Conklin came in and started complaining, stating that he was out working all night while Mallett was getting paid while lying in bed. *See* **Exhibit B**, p.108.  Conklin walked out of the break room and said, "You're a cunt." *See* **Exhibit A**, p. 12 and **Exhibit B**, p. 108.  During this altercation, Conklin also stuck his finger in Mallett's face and said, "You're going down nigger." *See* **Exhibit A**, p. 12.  This was the only incident of harassment by Conklin that Mallett reported to his supervisor. *See* **Exhibit A**, p. 168.

The undisputed facts in this case demonstrate that Union Defendants, Butch Paradis, Steven Clark and AFSCME Council 4 did not participate in specific acts of harassment and retaliation alleged by the Plaintiff in violation of his First and Fourteenth Amendment rights.  However, the Plaintiff has labeled Counts One, Two, Five, Seven and Eight "as to all individual defendants." Within the Counts, the Plaintiff has not alleged or presented any evidence of an altercation with Union Defendants, Butch Paradis and Steven Clark.  Accordingly, the Union Defendants request summary judgment as to all Counts.

## II.    ARGUMENT

### A.    Standards for Summary Judgment.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(e); Manning v. CIGNA Corporation, 807 F.Supp. 889, 892 (D.Conn. 1991). A factual issue is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if it "might affect the outcome of the suit under the governing law." Id. at 255. In deciding whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party. Id. "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law. . . ." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) [ellipses in original; internal quotation marks and citations omitted].

The initial burden is on the moving party to show that there are no relevant facts in dispute. Celotex, 477 U.S. at 323. To defeat a properly supported motion for summary judgment, however, "the plaintiff must present affirmative evidence . . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257. "The mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Fax Telecommunicaciones Inc. v. AT & T, 138 F.3d 479, 485 (2d Cir. 1998) [emphasis and ellipses in original; internal quotation marks and citations omitted].

> In order to defeat a summary judgment motion that is properly supported by
> affidavits, depositions, and documents as envisioned by Fed.R.Civ.P. 56(e), the
> opposing party is required to come forward with materials envisioned by the Rule,
> setting forth specific facts showing that there is a genuine issue of material fact to be
> tried.  He cannot defeat the motion by relying on the allegations in his pleading, . . .
> or on conclusory statements, or on mere assertions that affidavits supporting the
> motion are not credible, see, e.g., L & L Started Pullets, Inc. v. Gourdine, 762 F.2d
> 1, 3-4 (2d Cir.1985); Wyler v. United States, 725 F.2d 156, 160 (2d Cir.1983).  The
> motion "will not be defeated merely . . . on the basis of conjecture or surmise."
> Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112
> S. Ct. 152, 116 L.Ed.2d 117 (1991).

Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) [some internal citations omitted].

"If the undisputed facts reveal that there is an absence of sufficient proof as to any essential

element on which the opponent of summary judgment has the burden of proof, any factual dispute

with respect to other elements becomes immaterial and cannot defeat the motion." Id. at 519.

This memorandum will address in the following order: Count Four, since it is directed

solely at the Union; followed by Counts One, Two, Five, Six, Seven and Eight, directed at all

individual defendants.

**B.    FOURTH COUNT—Summary Judgment is proper because the Plaintiff has not alleged or proved a viable claim for breach of the duty of fair representation, and as a matter of law, union agents may not be held individually liable.**

**1.    Union agents may not be held individually liable when they act on behalf of the union in collective bargaining activity.**

Although the caption of the Plaintiff's Complaint purports to sue Butch Paradis and Steven

Clark in their individual capacity as president of the union, the well-settled law establishes that the

Plaintiff cannot recover damages against them.

The Plaintiff cannot recover damages against the Defendants as individuals where the

allegations focus on their conduct as union president.  Morris v. Local 819, 169 F.3d 782 (2d Cir.

1999); Covello v. Depository Trust Co., 88 F.Supp.2d 59, 61 (E.D.N.Y. 2000); Butler v. McCarty,

740 N.Y.S.2d 801, 808, 191 Misc.2d 318, 327 (2002); Stafford v. Meek, 762 So.2d 925, 926 (Fla.App. 2000) ("It is well settled that union agents may not be held individually liable when they act on behalf of the union in a collective bargaining activity."); In re ABF Freight System, Inc., Labor Contract Litigation, 988 F.Supp. 556, 569 (D.Md. 1997); Moore v. Local 569 of the Int'l Bhd. of Electrical Workers, 653 F.Supp. 767, 774 (S.D. Cal. 1987).

The duty of fair representation applicable to municipal employees, set forth in Conn. Gen. Stat. § 7-468(d), clearly establishes that such duty is owed by the labor organization:

> When an employee organization has been designated in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, **it** shall have a duty of fair representation to the members of that unit.

[emphasis added]  Therefore, the duty which is owed to the plaintiff is owed by the union, and he is not entitled to single out an officer thereof and seek to recover damages against him personally for acts undertaken within the scope of his position as union president.

The United States Court of Appeals for the Second Circuit concluded, in Morris v. Local 819, 169 F.3d 782 (2d Cir. 1999), that: "We now join the other circuits that have considered the issue and hold that...[there is] a shield of immunity for individual union members in suits for breach of the duty of fair representation."

Therefore, Defendants Paradis and Clark cannot be held individually liable, and their Motion for Summary Judgment should be granted.

### 2.  **The Plaintiff has failed to allege, and cannot prove, a viable claim for breach of the duty of fair representation against the Union.**

The record of this case is unusually clear:  the Plaintiff has testified that he does not recall any of the specifics as to what the union failed to do.  *See* **Exhibit** A, pp. 25-27.  In his deposition on July 20, 2004 the Plaintiff stated the following:

Q    Page—Paragraph 85 you say that the union breached its duty by failing to adequately follow through and provide necessary adjustments requested by the union. How many adjustments did you request?

A    I don't remember that.

Q    Do you remember what the adjustments were?

A    No.

Q    When you say the union failed to adequately follow through and provide necessary adjustments, what did the union fail to do?

A    I don't recall the specifics of what they didn't do right now. I don't remember.

Q    At any of the times when you answer you don't recall, if it comes to light will you advise your attorney about it so she can notify us.

A    Yes.

Q    On page—Paragraph 86 you say, "Defendant union breached its duty of fair representation by failing to provide a proper forum for the adjudication of grievances." What do you mean by that?

A    I don't recall.

Q    Pardon?

A    I don't recall.

Q    In paragraph 87 you indicated the union deprived you of your rights afforded by the personnel rules of the Town of Plainfield. Could you tell us what rights you feel you were afforded and denied under the personnel rules of the Town of Plainfield.

A    I don't remember.

Q    Plainville. I'm sorry. And how about under the collective bargaining agreement of the Town of Plainville, could you tell us what rights you were denied under that collective bargaining agreement?

A    I don't recall the specific rights, no.

Plaintiff's Complaint at ¶¶ 33 and 34 state that the Plaintiff purportedly invoked the grievance procedures set forth in the collective bargaining agreement. Mallett contends that the Union failed to adequately follow through and provide the necessary adjustments. *See* **Exhibit A**, p. 25. However, the Plaintiff has presented no evidence and cannot recall how many adjustments he requested or what the adjustments were. *See* **Exhibit A**, p. 25. The Plaintiff has presented no evidence that Union breached its duty of fair representation. Because the Plaintiff cannot prove that the Union breached its duty, summary judgment should enter on behalf of the Union.

A union breaches its duty of fair representation to a client "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); Labbe v. Hartford Pension Commission, 239 Conn. 168, 194 (1996).

"Arbitrary or bad-faith conduct . . . or substantial evidence of fraud, deceitful action or dishonest conduct . . . is required to show a breach of the duty of fair representation." Cruz v. Local Union No. 3 of the Int'l. Bhd. of Electrical Workers, 34 F.3d 1148, 1154 (2d Cir. 1994), quoting Ryan v. New York Newspaper Printing, 590 F.2d 451, 455 (2d Cir. 1979) [ellipses in Cruz]. "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz, 34 F.3d at 1153-54. As long as the Union acted in good faith, the Court may not intercede on the part of an employee who may have been prejudiced by a rationally founded decision. Cook v. Pan American World Airways, Inc., 771 F.2d 635, 645 (2d Cir. 1985).

In order for a union's actions to be arbitrary such that it breaches the duty of fair representation, the union's conduct must be "so egregious, so far short of the minimum standards

of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." Barr v. United Parcel Service, Inc., 868 F.2d 36, 43 (1989). "A union's action are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." Labbe, 239 Conn. at 195, quoting Air Line Pilots v. O'Neill, 499 U.S. 64, 67, 111 S. Ct. 1127, 113 L.Ed.2d 51 (1991) [internal quotation marks omitted, ellipses in Labbe]. In order for a union's actions to be in bad faith such that the duty of fair representation is breached, such actions must involve fraudulent, deceitful or dishonest conduct. Int'l. Union of Electrical Workers v. NLRB, 41 F.3d 1532, 1537 (D.C. Cir. 1994). Mere negligence or tactical errors on the part of the Union in processing a grievance do not constitute a breach of the duty of fair representation. Barr v. United Parcel Service, 868 F.2d 36, 43-44 (2d Cir. 1989); Murphy v. Air Transport Local 501, 123 F.Supp.2d 55, 58 (D.Conn. 2000); Fleming v. The Stop & Shop Supermarket Co., 36 F.Supp.2d 87, 90-91 (D.Conn. 1999).

The Plaintiff has neither alleged nor testified to any facts which would support a claim that the Union acted arbitrary, discriminatory or in bad faith. The undisputed facts are clear:  The Plaintiff has testified that he did not file grievances against the specific individuals involved in the alleged conduct. See **Exhibit A**, pp. 20-22, 53-54, 177. Therefore, Plaintiff's arguments that the Union Defendants "failed to follow through and provide necessary adjustments," and "failed to provide a proper forum," must fail. See **Plaintiff's Complaint**, ¶¶ 85, 86.

The Plaintiff has only alleged that Defendants Paradis and Clark were aware of the alleged conduct. See **Plaintiff's Complaint**, ¶¶ 34, 34. However, in Plaintiff's deposition testimony he states that he does not have any evidence on which to base such allegations. Plaintiff states:

Q      Okay.  In your complaint you say Mr. Paradis was aware of an allegation about a pit bull.  What do you base your assertion that Mr. Paradis was aware of a pit bull being maintained at the WPC?

A     He did work at the--well, he was at the plant from time to time.

Q     That's the only reason--is that the only factor that you base your conclusion on?

A     I don't recall what I base it on really specifically.

Q     How about your claim that Mr. Paradis was aware that WPC was being used as a health spa and fitness center?  What facts do you base that assertion on?

A     Mr. Paradis had visited the WPC several times.

Q     And that's what you base your assertion on?

A     I don't recall exactly what I based it on.

*See* **Exhibit A**, pp. 22-23.

Plaintiff's deposition testimony further contradicts other allegations in his complaint.  In ¶¶

33 and 34 of Plaintiff's Complaint, Mr. Mallett states that on May 13, 1994 he filed numerous

grievances against Kaine.  At his deposition, Plaintiff testified:

Q     Do you recall making an allegation against—filing a grievance against Mr. Kane for raising and keeping a pit bull at the WPC?

A     I remember grievances, but I don't remember filing specific grievances against Mr. Kaine in particular.

Q     Okay.  Let me ask: Did you file a grievance against Mr. Kaine for raising and keeping a pit bull at WPC?

A     I don't believe a grievance was filed specifically against Mr. Kaine.
Q     Did you file a grievance with anybody about raising and keeping a pit bull at WPC?

A     I believe I raised the issue.

Q     Did you file a grievance, though?

A     I believe so.

Q     And what about did you file a grievance for misuse of town property at the health spa and fitness center?

A      I don't recall specifically filing a grievance as to misuse of town property.

*See* **Exhibit A**, pp. 21-22.

In the seminal case on the duty of fair representation, <u>Vaca v. Sipes</u>, 386 U.S. 171, 87 S. Ct.

903, 17 L.Ed.2d 842 (1967), the U.S. Supreme Court reversed a finding that the union in that case

had breached its duty of fair representation where the union had made a determination that pursuit

of the grievance would be fruitless.  The Court acknowledged the fact that "[i]n administering the

grievance and arbitration machinery as statutory agent of the employees, a union must, in good

faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances."  <u>Id</u>. at

194, 87 S. Ct. at 919.  The Court noted some of the policies underlying this principle:

> If the individual employee could compel arbitration of his grievance regardless of its
> merit, the settlement machinery provided by the contract would be substantially
> undermined, thus destroying the employer's confidence in the union's authority and
> returning the individual grievant to the vagaries of independent and unsystematic
> negotiation.  Moreover, under such a rule, a significantly greater number of
> grievances would proceed to arbitration.  This would greatly increase the cost of the
> grievance machinery and could so overburden the arbitration process as to prevent it
> from functioning successfully.  It can well be doubted whether the parties to
> collective bargaining agreements would long continue to provide for detailed
> grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d),
> <u>supra</u>, if their power to settle the majority of grievances short of the costlier and
> more time-consuming steps was limited by a rule permitting the grievant unilaterally
> to invoke arbitration.  Nor do we see substantial danger to the interests of the
> individual employee if his statutory agent is given the contractual power honestly
> and in good faith to settle grievances short of arbitration.  For these reasons, we
> conclude that a union does not breach its duty of fair representation, and thereby
> open up a suit by the employee for breach of contract, merely because it settled the
> grievance short of arbitration.

<u>Id</u>. at 191-92, 87 S. Ct. at 917-18 [internal footnote omitted].  Accordingly, the Court held, "Having

concluded that the individual employee has no absolute right to have his grievance arbitrated under

the collective bargaining agreement at issue, and that a breach of the duty of fair representation is

not established merely by proof that the underlying grievance was meritorious, we must conclude

that that duty was not breached here."  <u>Id</u>. at 194-95, 87 S. Ct. at 919.

In the instant case, no claim can even be made that any underlying grievance—if in fact a grievance was filed—was meritorious. If grievances were filed the Union has the right not to proceed on such basis as lack of merit. Therefore, even if the Plaintiff were to locate copies of any of the alleged grievances , there exists, nonetheless, no basis upon which a reasonable jury could return a verdict in favor of the plaintiff for breach of the duty of fair representation.

Further, the specific acts of harassment alleged in the complaint were not made by the Union Defendants. Plaintiff has not set forth any facts tying the individual Union defendants to such acts. Defendant Clark did not witness nor participate in any of the alleged harassment. *See* Affidavit of Steven Clark, **Exhibit D**. The Plaintiff at his deposition has testified on numerous occasions that he did not even report the altercations he had with co-employees Conklin, Becker or Kaine. *See* **Exhibit A**, p. 168; **Exhibit B**, p. 90-91. Accordingly, Plaintiff's claim against the Union Defendants must fail. It is abundantly clear that the Union did not breach its duty of fair representation to the plaintiff. Therefore, the Union Defendants respectfully ask that summary judgment enter in their favor.

3. **Even if the plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.**

It is well-settled that claims for a breach of the duty of fair representation are subject to a six-month statute of limitations. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." Cohen v. Flushing Hosp. and Medical Center, 68 F.3d 64, 67 (2d Cir. 1995) [internal brackets, quotation marks and citation omitted]; see also Ycaza v. CT

Transit-Stamford Division, ___ F.Supp.2d ___, 2003 WL 22427762 at *2 (D.Conn. 2003); Wilhelm v. Sunrise Northeast, 923 F.Supp. 330, 337 (D.Conn. 1995).

Plaintiff claims that grievances were filed on were filed on May 13, 1994. *See* **Plaintiff's Complaint**, ¶¶ 33, 34. He claims that the Union Defendants failed to "follow through and provide necessary adjustments." *See* **Plaintiff's Complaint**, ¶ 85. This case was filed on June 21, 2001; therefore, even if the plaintiff had alleged and could prove an otherwise viable claim for breach of the duty of fair representation, such claim would be time-barred.

Accordingly, the Union Defendants respectfully ask that this Court enter summary judgment in their favor.

## C.    FIRST COUNT—As a matter of law, the Union Defendants cannot be held liable for a First Amendment retaliation claim.

In this case, the Union Defendants are entitled to summary judgment as to Count One. Plaintiff brings his First Amendment claim pursuant to 42 U.S.C. §1983. *See* **Plaintiff's Complaint**, §IV. Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws. Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct.2764.

The Supreme Court has defined "acting under color of law" as acting with power possessed by virtue of the defendant's employment with the state. West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255. "The dispositive issue is whether *the official* was acting pursuant to the power he/she *possessed by state authority* or acting only as a private individual." Edwards v. Wallace Community College, 49 F.3d 1517 (11th Cir.1995), citing, Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482 (1961) [Emphasis added].

Defendants Paradis and Clark were presidents of AFSCME Council 4, Local 1303-56. *See* **Plaintiff's Complaint**, ¶¶79, 80. The Union is a private entity without any government

involvement. Plaintiff's complaint does not allege any facts tying the Union and its presidents to the government or state, and the Plaintiff has presented no such evidence. The Union presidents Paradis and Clark did not possess any governmental supervisory power over Mr. Mallett. The Plaintiff has not alleged **any** specific acts of harassment or retaliation by Defendants Clark and Paradis. The Plaintiff has simply "thrown" Defendants Clark and Paradis into this Count. However, even if acts of harassment or retaliation did take place, despite the fact that they are not alleged, "[c]ases have declined to find liability under §1983 against a co-employee for harassment when the harassment did not involve use of state authority or position. Rouse v. City of Milwaukee, 921 F.Supp. 583, 588 (E.D. Wis. 1996) [Citations omitted]. The conduct alleged by the Plaintiff does not constitute a use of State authority to violate one's First Amendment rights. Any allegations against the Union Defendants falls under the cause of action breach of the duty of fair representation. As stated earlier, the Plaintiff has failed to set forth a viable claim for such cause of action. As to count One, the Union Defendants are not governmental actors, and the Plaintiff has not alleged such. There are no relevant facts in dispute. Accordingly, the Union Defendants seek summary judgment in their favor as to Count One.

**D.      COUNT TWO-- As a matter of law, the Union Defendants cannot be held liable for a violation of the Plaintiff's Fourteenth Amendment Right to Due Process.**

The Union Defendants are entitled to summary judgment as to Plaintiff's due process claim. The Plaintiff alleges that the Defendants "violated his constitutional rights by depriving him of liberty without due process of law by carrying out a pattern of outrageous conduct including harassment, failing to adequately act upon plaintiff's complaints, and disparaging plaintiff at his workplace." *See* **Plaintiff's Complaint,** ¶ 65.

First and foremost, as stated earlier, the Plaintiff has not alleged facts or provided any evidence that Defendants Paradis and Clark engaged in specific acts of harassment disparaging him

at the workplace. Defendant Clark did not work in the same department, nor did he witness any of the alleged harassment. *See* **Exhibit D**. The Plaintiff was not subject to any negative employment action by the Union Defendants. Paradis and Clark were merely Union presidents within the span of time that the Plaintiff worked for the Water Pollution Control. To defeat a motion for summary judgment, "the plaintiff must present affirmative evidence....from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Plaintiff cannot defeat a motion for summary judgment by relying on the allegations in his pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996).

Second, if the Plaintiff is going to claim that Union Defendants Paradis and Clark failed to adequately act upon his complaints then the proper cause of action to allege would be breach of the duty of fair representation. As stated earlier, the Plaintiff claims breach of the duty of fair representation in Count Four, but fails to set forth a viable claim.

As to Plaintiff's claim in Count Two that the Union Defendants violated his Fourteenth Amendment rights to due process, summary judgment in the Union Defendants favor is proper. The are no relevant facts in dispute. Clark and Paradis were merely Union presidents. In a due process challenge, the Court must determine "whether the behavior *of the governmental officer* is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708 (1998) [Emphasis added]. The Plaintiff's due process claim is brought pursuant to 42 U.S.C. §1983. As set forth above, the Union Defendants are entitled to summary judgment because they were not acting under of color of law. *See* **Section C**, above.

18

E.    **COUNT FIVE—The Union Defendants are entitled to summary judgment as Plaintiff's claims of violation of Conn. Gen. Stat. §§53a-62 and 46a-71 must fail as a matter of law.**

Conn. Gen. Stat. §53a-62 falls within the Connecticut Penal Code. Such section states:

(a) A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror.

(b) Threatening in the second degree is a class A misdemeanor.

Section 53a-62 states that conduct in violation of the statute constitutes a class A misdemeanor. It does not provide for a civil cause of action. Torres v. Armstrong, 2001 Ct. Sup. 12554 (September 6, 2001) (Thompson, J.)

Therefore, the Union defendants are entitled to summary judgment as to this claim.

Conn. Gen. Stat. §46a-71 is equally inapplicable to the Union Defendants. Such statute states:

(a) All services of every state agency shall be performed without discrimination based upon race, color, religious creed, sex, age, national origin, ancestry, mental retardation, learning disability or physical disability, including, but not limited to, blindness.

(b) No state facility may be used in furtherance of any discrimination, nor may any state agency become a party to any agreement, arrangement or plan which has the effect of sanctioning discrimination.

(c) Each state agency shall analyze all of its operations to ascertain possible instances of noncompliance with the policy of sections 46a-70 to 46a-78, inclusive, and shall initiate comprehensive programs to remedy any defect found to exist.

(d) Every state contract or subcontract for construction on public buildings or for other public work or for goods and services shall conform to the intent of section 4a-60.

The above statute prohibits discrimination by *state* agencies only.  Defendants Clark and Paradis were presidents of AFSCME, Council 4, Local 1303-56.  The individuals and the Union are not considered a state agency.

**F.**     **COUNT SEVEN—Summary Judgment must be entered in favor of the Union Defendants as to Plaintiff's claim of Assault.**

Count Seven alleges assault by referencing Conn. Gen. Stat. §§53a-62 (Threatening) and 53a-64(Reckless Endangerment).  Conn. Gen. Stat. § 53a-62 is quoted above.  Conn. Gen. Stat. §53a-64 states:

> (a)  A person is guilty of reckless endangerment in the second degree when he reckless engages in conduct which creates a risk of physical injury to another person.

> (b)  Reckless endangerment in the second degree is a class B misdemeanor.

Both are statutes are criminal statutes.  As stated above, no civil action can arise from a criminal statute.  Therefore, summary judgment as to Count Seven is appropriate as to all individual defendants.

Assuming *arguendo*, that the Plaintiff has attempted to bring a common law cause of action for assault, he must prove "the intentional causing of imminent apprehension of harmful or offensive contact in another."  Dewitt v. John Hancock Mutual Life Ins. Co., 5 Conn. App. 590, 594 (1985); 1 Restatement (Second) Torts, §21 (1965).  In order to be held liable, "it is necessary that the actor intend to inflict a harmful or offensive bodily contact upon the other or a third person or put him in apprehension of such contact.  Unless he acts with such intent, the actor is not liable for an assault.  An assault cannot be accomplished by words alone.  There must be an overt act evidencing some corporeal threat."  D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts at §8, p.9 (3rd Ed. 1991).

As to the individual Union Defendants, the Plaintiff has not alleged in the Complaint, nor presented any evidence, that either Clark or Paradis said or did anything to cause apprehension of harmful contact with the Plaintiff. The Plaintiff's claim must fail, and summary judgment as to the Seventh Count is proper.

G.    **COUNT EIGHT—The Union Defendants are entitled to summary judgment as to the Plaintiff's intentional infliction of emotional distress claim.**

Under Connecticut law, a claim of intentional infliction of emotional distress requires proof that: (1) the defendant intended or knew that emotional distress was a likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress and (4) the distress was severe. <u>Cowan v. Federal Exp. Corp.</u>, 25 F.Supp.2d 33 (Conn. 1998). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." 1 Restatement (Second) of Torts §46, p. 73, comment (d).

Plaintiff alleges: "The individual Defendants, each and all of them, intended to inflict severe emotional distress upon the Plaintiff, and knew or should have known at all times that their acts and/or omissions as alleged herein would result in severe emotional distress to the Plaintiff." *See* **Plaintiff's Complaint**, ¶ 80. The Plaintiff further alleges: "The acts and/or omissions of the individual Defendants, each and all of them were extreme and outrageous." *See* **Plaintiff's Complaint**, ¶ 81.

As stated earlier, the Plaintiff cannot defeat a motion for summary judgment by relying on the allegations in his pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. <u>Gottlieb v. County of Orange</u>, 84 F.3d 511, 518 (2d Cir. 1996). The Plaintiff has not alleged any specific instances of behavior by Union Defendants Clark

and Paradis that would constitute extreme or outrageous behavior. The only instances of alleged conduct relating to the Union Defendants are the following:

1) Defendant Paradis was aware that Becker posted harassing messages on the Water Pollution Control bulletin Board and failed to take action. *See* **Plaintiff's Complaint**, ¶ 33.

2) Defendant Paradis was aware of Kaine's use of the town's property as a health spa and fitness center and failed to take action. *See* **Plaintiff's Complaint**, ¶34.

3) Defendant Paradis was aware that Kaine was raising and keeping a pit bull at the Water Pollution Control and failed to take action. *See* **Plaintiff's Complaint**, ¶ 34.

Such allegations and conduct are insufficient to constitute extreme or outrageous conduct beyond all possible bounds of decency. "Conduct that is merely insulting, that reflects bad taste or judgment, or that results in hurt feeling is not enough to maintain a cause of action for intentional infliction of emotional distress." <u>Martin v. Citibank, N.A.</u>, 762 F.2d 212, 220 (2nd Cir. 1985); <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 266-67 (1991).

Further, such alleged conduct took place in 1994. Under Connecticut law there is a three year statute of limitations for intentional torts. Conn. Gen. Stat. §52-577. The facts are clear and undisputed, and the law is well-settled. The Plaintiff's claim for intentional infliction of emotional distress must fail. Therefore, it is proper for the Court to award summary judgment in favor of the Union Defendants as to Count Eight.

## III.    CONCLUSION

For the reasons set forth above, Defendants Butch Paradis, Steven Clark and AFSCME Council 4, Local 1303-56 respectfully ask that this Court grant summary judgment in their favor as to Counts One, Two, Four, Five, Seven and Eight.

Respectfully submitted,
DEFENDANTS, BUTCH PARADIS,
STEVEN CLARK and AFSCME,
LOCAL 1303-56


By _____

J. William Gagne, Jr.
Law Office of J. William Gagne Jr.
    & Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT 06109
Telephone: (860) 522-5049
Facsimile: (860) 571-6084
Fed. Bar No. ct02126
Email: jwgagne@snet.net

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on October 28, 2004, to all counsel and pro se parties of record, as set forth below:

Erin O'Neil, Esq.
Brewer & O'Neil
818 Farmington Avenue
West Hartford, CT 06119

Dennis G. Ciccarillo, Esq.
Eisenberg, Anderson, Michalik & Lynch, LLP
136 West Main Street
P.O. Box 2950
New Britain, CT 06050-2950

Alexandria Voccio, Esq.
Howd & Ludorf
65 Wethersfield, Avenue
Hartford, CT 06114

_____
J. William Gagne, Jr.