**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | | |
|---|---|---|
| RICHARD B. MALLETT, | ) | CIVIL ACTION NO. |
| Plaintiff | ) | 3:01 CV 1137 (AHN) |
| VS. | ) | |
| TOWN OF PLAINVILLE, ET AL., | ) | NOVEMBER 19, 2004 |
| Defendants | ) | |

## PLAINTIFF'S LOCAL RULE 56(a) STATEMENT IN OPPOSITION TO THE TOWN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, the plaintiff files this Local Rule 56(a) (1) Statement in response to the Defendants Town of Plainville, John Bohenko, Robert Jackson, Shirley Osle, Robert Jahn, and Janet Marineau, (hereinafter, "the Town Defendants").

**A.   March, 1990 through June, 1993**

1.    On or about March ] 990, the plaintiff was hired, and began working at the Water Pollution Control (WPC) Department with the Town of Plainville. (Complaint, Count One, Par. 11).

**Admit**

**2.**   The plaintiff claims to have observed Mr. Becker criticizing both himself and other employees, in staff meetings, for their job performance. (Depo. of Mr. Mallett, December 4, 2001, pp. 39, 41, 42, 49, 76, **Exhibit A;** July 20. 2004, pp. 39-40, **Exhibit B).**

**Deny. Becker went beyond merely criticizing for his work performance. Mallet 2001 Deposition, ¶¶ 39, 41-44, 56-59.**

3.    The Plaintiff believes that some people on the WPC crew considered him to be ofless than a certain level of competence, and that this was a reason for "retaliation." (Depo. Of Mr. Mallett, July 20, 2004, pp. 85-6, Exhibit B).

**Admit.**

4.    The plaintiff further claims that the defendant, James Kaine, participated in the criticisms made by Mr. Becker, as Mr. Kaine was also allegedly dissatisfied with Mr. Mallett's job performance. (Depo. of Mr. Mallett, December 4, 2001, p. 48, Exhibit A; July 20, 2004, pp. 125, Exhibit B).

**Deny,  that Kaine merely criticized the plaintiff's work performance.  Mallet 2001 Deposition, ¶¶ 88-90.**

5.    This criticism occurred on one occasion before the plaintiff left the WPC in July of 1992. (Depo. of Mr. Mallett, December 4, 2001, p. 49,. Exhibit A).

**Admit.**

6.   The plaintiff believed that there was an effort to convince management that he was incompetent and unsafe. Management never disciplined, warned or in any way punished Mr. Mallett because of what anybody allegedly said about him that was untrue or false. (Depo. Of Mr. Mallett, July 20, 2004, pp. 119, 121-22, Exhibit B).

**Admit.**

7.    At all times, the plaintiff understood that Mr. Becker and Mr. Kaine were co-employees, and did not have supervisory power. (Depo. of Mr. Mallett, December 4, 2001, p. 27, Exhibit A).

**Deny.  Kaine was in "direct responsible charge" of Mallet and controlled what assignments he got.**

8.   The plaintiff filed a workers compensation claim in approximately July, 1992, and was out of work until approximately September, 1992. The Town contested the claim. (Depo. 4, 2001, p. 58, Exhibit A).

**Admit.**

9.   On or about September 14, 1992, with representation by an attorney, Mr. Mallett signed a Stipulation for Agreement and Award through the Workers Compensation Commission for the Sixth District by which Mr. Mallett settled all claims with respect to harassment and abuse by co-employees, accepted a job in the Department of Public Works, and received other good and sufficient consideration. (Affidavit of Shirley Osle, Exhibit C, with Attachment 1 thereto)

**Admit.**

10.    The plaintiff does not believe that the Town did anything wrong in reassigning him back to the position of Operator I at the WPC in 1993. (Depo. Of Mr. Mallett, July 20, 2004, p. 45, Exhibit B).

**Admit.**

**B.  June 14, 1993 through and including August of 1995**

11.         On or about June of 1993, Mr. Mallett resumed his job with the WPC. (Complaint, Count One, Par. 27).

**Admit.**

12.        Plaintiff recalls that an incident occurred with Mr. Becker one month later, in July of 1993, whereby Mr. Becker called him names. (Depo. of Mr. Mallett, December 4, 2001, p. 56. Exhibit A) (Complaint, Count One, Par. 28).

**Admit.**

13.        The plaintiff did not report the incident of name calling to either the EEOC or the Connecticut Commission on Human Rights and Opportunities. (Depo. of Mr. Mallett, December 4, 2001, p. 58, Exhibit A).

**Admit.**

14.        The plaintiff further testified that Mr. Becker, on one occasion in July of 1993, road by in a truck and said "fuck you, asshole." (Depo. of Mr. Mallett, December 4, 2001, p. 59, Exhibit A) (Complaint, Count One, Par. 29).

**Admit.**

15.        The plaintiff further recalls that, during this same month, Mr. Becker allegedly whispered baby noises into his ear, while he was in the supervisors office. (Depo. Of Mr. Mallett, December 4, 2001. p. 60, Exhibit A) (Complaint, Count One, Par 30).

**Deny that Becker was whispering baby noises in the plaintiff's ear, Becker was taunting the plaintiff with baby crying and whining noises to antagonize him. Mallet 2001 Deposition, ¶¶ 60.**

16.        The plaintiff believes that the defendant, James Kaine, "harassed" and "taunted" him based on his laughter at Mr. Becker's comments. (Depo. of Mr. Mallett, December 4, 2001, 

p. 60-61, Exhibit A).

**Admit.**

17.    The plaintiff alleges that, in August of 1993, he was interviewed at length by then Town Manager John Bohenko, and that he offered information concerning Mr. Becker's alleged harassment of a co-employee (Patricia Cassidy) as well as information concerning Mr. Becker' salleged harassment of Mr. Mallett himself. (Complaint, Par. 33; Depo. of Mr. Mallett, December4, 2001, p.61-64, Exhibit A; July 20, 2004, pp. 47-50, Exhibit B).

**Admit.**

18.    On or about September, 1993, Mr. Becker was suspended for three days. (Complaint, Par. 31; Answer, Par. 31)

**Admit .**

19.    At the August, 1995, arbitration hearing on Mr. Becker's grievance challenging his three day suspension, which suspension had emanated from the investigation that included the Bohenko-Mallet interview, Town Manager Bohenko sought Mr. Mallet's opinion regarding a resolution of the arbitration, and Mr. Mallet agreed to the proposed resolution. (Complaint, Par.36; Depo. Of Mr. Mallet, December 4, 2001, pp. 81-2 Exhibit A; July 20, 2004, p. 52, Exhibit B).

**Admit.  Becker told him he  was "king of the head games" and that he was "trying to push" him "over the edge". Becker also threatened to sue Mallet at this time if he did not withdraw his complaint. Accordingly, while Mr. Mallet agreed to the proposed resolution, he did not report what Becker said at this time because he feared further retaliation.   Plaintiff's Affidavit, ¶ 44.**

20.     The plaintiff did not file a claim with the EEOC or the CHRO for the claimed harassment by Mr. Becker or any retaliation claimed to have been caused by Mr. Mallett's participation in Town Manager Bohenko's investigation of both his and Ms. Cassidy's complaints. (Depo. of Mr. Mallett, December 4, 2001, p. 63-4, Exhibit A).

**Admit.**

21.     The plaintiff claims to have filed a grievance against Mr. Becker for allegedly placing miscellaneous rags and refuse papers up on a general bulletin board. (Complaint, Par. 33; Depo. of Mr. Mallett, December 4, 2001, p. 65-66, Exhibit A). The plaintiff did not file any grievance over this (Depo. Of Mr. Mallett, July 20, 2004, p. 177, Exhibit B), and he does not recall complaining to any supervisor regarding the alleged posting of harassing messages on the bulletin board. (Depo. Of Mr. Mallett, July 20, 2004, p. 178, Exhibit B).

**Deny. The plaintiff did report the posting of harassing materials to Joe Watkins, plant superintendent at that time. Mallet 2004 Deposition, ¶¶ 15-19.**

22.     Regarding the alleged bulletin board postings, the plaintiff does not know if the actor was Mr. Becker or someone else who worked at the WPC. (Depo. of Mr. Mallett, December 4, 2001, p. 66-67, **Exhibit A).**

**Deny, in part that Becker did admit to the plaintiff that he was responsible for the postings. Mallet 2004 Deposition, ¶¶ 171-172.**

23.     The Plaintiff claims to have filed numerous grievances against Mr. Kaine in May, 1994 (Complaint, Par. 34). The plaintiff does not believe, or cannot remember filing numerous grievances with the Town against the defendant Kaine, based on his belief that Mr. Kaine misused town property. (Depo. of Mr. Mallett, December 4. 2001, p. 67, Exhibit A July 20, 2004, pp. 21-2, Exhibit B).

**Admit.**

24.    Specifically, the plaintiff believed that Mr. Kaine misused town property when: (1) with the WPC's permission, Mr. Kaine used his own gym equipment while at a town garage; and (2) with the WPC's permission, he kept a dog at the garage during the daytime. (Depo. of Mr. Mallett, December 4, 2001, p. 69-73, Exhibit A). The Plaintiff had known about and used the gym equipment for three or four years, and he had contributed to the dog's upkeep. Id.

**Deny.   The plaintiff did not use the gym equipment for 3 or 4 years. The plaintiff was retaliated against for not contributing to the dogs upkeep. Plaintiff's Affidavit, ¶ 45.**

25.    The plaintiff does not recall reporting or complaining to anyone in management about either the gym equipment or the pit bull. (Depo. Of Mr. Mallett. July 20, 2004, pp. 177-78, Exhibit B).

**Admit.**

26. If the plaintiff did report anything about the gym equipment or the pit bull to management, he was not mistreated or punished by the Town in any way for mentioning these things. (Depo. Of Mr. Mallett, July 20, 2004, p. 113, Exhibit B).

**Admit.**

27. The plaintiff claims that, from October 1993 to August 1995, he was subject to numerous "threats" and "acts of intimidation," which was directed by Becker and Kaine, due to his alleged filing of grievances. (Complaint, Count One, Par. 35).

**Admit.**

28. The plaintiff claims that these oblique threats occurred during crew meetings with the WPC staff, in the form of Becker and Kaine criticizing him for his work performance. (Depo. of Mr. Mallett, December 4, 2001, p. 75-76, Exhibit A).

**Deny. Becker and Kaine went beyond merely criticizing for his work performance.  Mallet 2001 Deposition, ¶¶ 39, 41-44, 56-59, 88-90; Mallet 2004**

**Deposition, ¶164-166.**

29.    The plaintiff either believes that this alleged "harassment" was due to the May, 1994,  grievances based solely on the "air in the department" and nothing else. (Depo. of Mr. Mallett. December 4, 2001, p. 76-77, Exhibit A), or that it was due to his having stood up to the

"workplace bully," [Becker] in 1991 or 1992, over Mr. Becker having told Mr. Mallett that he would have to clean toilets.   (Depo. Of Mr. Mallett, July 20, 2004, p. 161-62, 165-66, Exhibit B).

**Admit.**

30.    There was never any physical harm inflicted upon the plaintiffs person by any defendant named in this case, nor was there any physical threats of immediate harm. (Depo. of Mr. Mallett, December 4, 2001, p, 78-79, **Exhibit A).**

**Admit.**

**C.   June 1999 through and including February 7, 2001**

31.    The plaintiff does not set forth any claims of misconduct by any of the defendants from August 8, 1995, until June, 1999, a gap in time of approximately four (4) years. (Depo. Of Mr. Mallett, December 4, 2001, p. 82, Exhibit A; Complaint, Count One, Par. 36, 37).

 **Deny, that Kaine did harass and retaliate against him consistently from 1995 through 2001 when his employment ended with the WPC but the plaintiff did not complain for fear of further retaliation. Mallet 2001 Deposition, ¶¶ 91; Mallet 2004 Deposition, ¶¶ 167-171.**

32.    The plaintiff claims, that he was offered training toward lab certification by Jan Marineau and Richard Tingle; that the "Defendants" consistently denied him training, and that he was replaced by another employee as the back-up lab technician. (Complaint, Count One, Par37)

**Admit.**

33.    The plaintiff claims that he volunteered to be the part time helper in the lab in 1995, and that he did "sampling," and washed dishes for a few years on and off, without any change in his rate of pay. (Depo. Of Mr. Mallett, July 20, 2004, pp. 82-84, Exhibit B). The plaintiff claims that he was rotating in this role with another employee, and that he asked for more lab time because he made mistakes on tests. (Depo. Of Mr. Mallett, July 20, 2004, pp. 96-97, Exhibit B).

**Admit.**

34.    The plaintiff does not know who actually denied him lab time, or the reasons why his lab time was decreased by the WPC. (Depo. of Mr. Mallett, December 4, 2001, p. 84, Exhibit A).   The plaintiff speculates that it could have been the defendant, James Kaine, whom he believes was in charge of staffing back in June. 1999. (Depo. of Mr. Mallett, December 4, 2001, p. 84, Exhibit A); and he also believes that Tingle wanted him out of the lab (Depo. Of Mr. Mallett, July 20, 2004, p. 65, Exhibit B), and that the decision was- Tingle's (Depo. Of Mr. Mallett, July 20, 2004, p. 176. Exhibit B).

**Deny, in that Kaine was responsible for Mallet's assignments. Kaine assigned a junior man with less experience than the plaintiff. Mallet 2001 Deposition, ¶¶ 83, 119; Mallet 2004 Deposition, ¶¶ 60-66, 83-85.**

35.    It "appeared" to the plaintiff that he was replaced as the back-up lab helper by, and because, another employee had worked on the lab director's [Tingle's] car (Depo. Of Mr. Mallett, July 20, 2004, p. 65, Exhibit B), or that Tingle conspired with several other WPC

crew members to get him out, all because he did not attend and vote at a certain union

election in November, 1999. (Complaint, Par. 40; Depo. Of Mr. Mallett, July 20, 2004, p. 65-

69, Exhibit

B).

**Deny, in that the plaintiff was retaliated for his failure to vote for Becker at a union election that resulted in part in his denial of lab time. Mallet 2001 Deposition, ¶¶ 83, 119; Mallet 2004 Deposition, ¶¶ 60-66, 83-85.**

36.          The plaintiff did not receive any additional compensation for the role of

back-up lab helper, and he did not complain to Jan Marineau about either the compensation

or being relieved of this additional role. (Depo. Of Mr. Mallett, July 20, 2004, pp. 84-5, 107-

8, Exhibit B).

**Deny, th e plaintiff did suffer a loss of compensation from being denied the role of back up helper. Plaintiff's affidavit, ¶46.**

**37.**          Janet Marineau had always encouraged Mr. Mallett to receive as much training as

he would like, both internally by helping in the lab and externally via programs offered by

third parties, and whether specific to lab functions or to waste water treatment generally.

Over the years, starting in 1990 and continuing at least through 2000, Mr. Mallett received

substantial training through the Town. (Affidavit of Janet Marineau, Exhibit D, and

attachment thereto).

**Admit.**

38.          For a period of time:, one of Mr. Mallett's roles was acting as the primary back-

up in the lab to the Chemist, Richard Tingle. This meant that he had occasional tasks,

principally in Mr. Tingle's absence. On or before July 26, 2000, Mr. Tingle reported to me

that Mr. Mallett was having a problem getting the tests done right, and that he, Mr. Tingle,

did not want to spend any more time redoing lab tests first performed by Mr. Mallett. On or about July 26, 2000, Ms. Marineau explained to Mr. Mallett that there had been problems with the tests that he performed, making specific reference to problems with the "BOD" (Biological Oxygen Demand) readings, asked him to consider continuing to help in the lab by being the second back-up, and offered that he could take additional training in the areas where he had experienced difficulty. At first, he expressed interest in doing this, but later he indicated that he was no longer interested in helping in the lab. He did not question Ms. Marineau about any of this, and he did not make any kind of complaint. (Affidavit of Janet Marineau, Exhibit D, Par. 4).

**Deny, in that the plaintiff was retaliated for his failure to vote for Becker at a union election that resulted in part in his denial of lab time. Mallet 2001 Deposition, ¶¶ 83, 119; Mallet 2004 Deposition, ¶¶ 60-66, 83-85.**

39.    The plaintiff did not ask Jan Marineau why he was no longer the back-up lab helper, and he did not make any complaint, including a grievance, over this. (Depo. Of Mr. Mallett, July 20, 2004, pp. 107-8. Exhibit B).

**Deny, in that Kaine was responsible for Mallet's assignments. Kaine assigned a junior man with less experience than the plaintiff. Mallet 2001 Deposition, ¶¶ 83, 119; Mallet 2004 Deposition, ¶¶ 60-66, 83-85.**

40.    In November, 1999, the plaintiff claims that the defendant, James Kaine, assigned him to a job at an isolated facility called "Siberia" for a four-month period of time. (P. Complaint, Count One, Par. 38).

**Admit.**

41. The plaintiff speculates that it was to get him away from the hostilities of the plant. (Depo. of Mr. Mallett, December 4, 2001, p. 85, **Exhibit A**).

**Deny, Kaine wanted to isolate him and cause further psychological damage.**

**Plaintiff's affidavit, ¶46; Mallet 2001 Deposition, ¶ 85.**

42. "Siberia" is the nickname for a certain WPC facility that was staffed at any one time by one person. All employees in the Operator I and Operator II classifications received assignments to "Siberia" from time to time, and the assignments could last for weeks to months at a time. The plaintiff does not know the length of any other employee's assignments to "Siberia." The plaintiff did not complain about this assignment.   (Depo. Of Mr. Mallett, July 20, 2004, pp. 35-38, 89, Exhibit B).

**Deny, that every employee had to serve the same amount of time in "Siberia".  The plaintiff was assigned to "Siberia" for long periods of time beyond the normal lengths. Mallet 2001 Deposition, ¶¶ 84-85; Mallet 2004 Deposition, ¶ 89.**

**Prior to Jan Marineau's arrival, operators were usually rotated weekly to give operators well rounded experience in a variety of tasks. This, however, changed when Kaine was given the authority to assign job assignments. Plaintiff's Affidavit, ¶ 43.**

43.      The plaintiff was assigned to "Siberia" from December 20, 1999 until January 21, 2000. For the period September, 1999 through January, 2000, five employees served in "Siberia," with the Defendant Michael Conklin serving the single longest stint, at seven weeks .Mr. Mallett never complained about this assignment, and there was nothing unusual about it. (Affidavit of Janet Marineau, Exhibit D, Par. 5, 6)

**Deny, that Kaine did harass and retaliate against him consistently from 1995**

**through 2001 when his employment ended with the WPC but the plaintiff did not**

**complain for fear of further retaliation. Mallet 2001 Deposition, ¶¶ 91; Mallet 2004**

**Deposition, ¶¶ 167-171.**

44.     Also in November, 1999, the plaintiff claims to have been threatened by

persons other than the defendants into attending a union meeting and voting for certain

individuals, including the defendant, Donald Becker (Complaint, Count One, Par. 39, 40).

**Admit.**

45.     When the plaintiff did not attend this meeting, the defendant, James Kaine,

allegedly confronted the plaintiff on the morning of December 14, 1999. (Complaint, Count

One, Par 41).

**Admit.**

46.     Mr. Kaine allegedly called the plaintiff "a piece of shit," and "a coward" for not

attending the meeting. (Depo. of Mr. Mallett, December 4, 2001, p. 89, **Exhibit A).**

**Admit.**

47.     Further, Mr. Kaine allegedly attempted to provoke the plaintiff into

striking him by saying "come on." Mr. Mallett merely walked away, and went to work.

Id.

`          **Admit.**

48.     The plaintiff claims to have disclosed some information to a Town resident

concerning his knowledge of time card abuses. (Depo. of Mr. Mallett, December 4, 2001, p.

94, Exhibit A). The plaintiff does not recall giving Mr. Cunningham any specific information

(Depo. Of Mr. Mallett, July 20, 2004, pp. 128, Exhibit B), and he only "may have spoken" to

someone about time cards. Id., at p. 114. The plaintiff s motivation for answering Mr. Cunningham's questions was that he was not happy with the way the place had been run for years. (Depo. of Mr. Mallett December 4, 2001, p. 100, Exhibit A).

**Deny, that the plaintiff did not volunteer information to Cunningham. The plaintiff offered information regarding improprieties at the WPC to Cunningham with knowledge that Cunningham would publish such information as Cunningham had such a reputation. Mallet 2001 Deposition, ¶¶ 92, 117; Mallet 2004 Deposition, ¶ 127-129.**

49.    On or about August 25, 2000, during a crew meeting, the defendant, Mr. Becker, allegedly accused the plaintiff of leaking information to a Town resident regarding time card abuses by certain WPC employees. (Complaint, Count One, Par. 44). In the meeting, Mr. Mallett did not agree or disagree with the accusation, and he made it a point not to speak in the meetings. (Depo. Of Mr. Mallett, July 20, 2004, pp. 128, 116, Exhibit B).

**Admit.**

50.    Mr. Mallett believes that the defendant Becker's accusations before the WPC crew were improper (Depo. of Mr. Mallett, December 4, 2001, p. 94, **Exhibit A).**

**Admit.**

51.    The plaintiff does not remember telling Shirley Osle, Robert Jackson, Robert .lahn, or Janet Marineau about his having spoken with Mr. Cunningham. (Depo. Of Mr. Mallett, July 20, 2004, p. 129-30, **Exhibit B).**

**Admit.**

52.    Subsequent to issue of the time cards in the summer and fall of 2000, the Plaintiffs only allegations against any individual Town Defendants is that they did not speak up for Mr. Mallett, and that they did not stop Becker from speaking in staff meetings. (Depo. Of Mr. Mallett, July 20. 2004, p. 113, Exhibit B; Complaint, Count One. Par. 44, 50).

**Deny, Mallet states that after the first meeting he approached Marineau and indicated to her how the humiliation made him feel. Additionally, he pleaded with her not to let him be subjected to that sort of treatment again. Despite his plea, however, a second meeting at the Town Hall was held. Once again, Mallet believes Becker was allowed to speak, harass, humiliate, and threaten him again. Plaintiff's affidavit ¶48.**

53.     On or about October, 2000, the plaintiff claims to have been promoted to crew leader (Complaint, Count One, Par. 48).

**Admit.**

54.     The plaintiffs promotion was rescinded the day after, allegedly due to complaints to upper management by his co-employees, Mr. Becker and Mr. Conklin. (Depo. of Mr. Mallett, December 4, 2001, p. 103**, Exhibit A).**

**Admit.**

55.     The plaintiff has no direct evidence of this activity by the defendants. (Depo. of Mr. Mallett, December 4, 2001, p. 103-104, Exhibit A). The plaintiff did not ask Jan Marineau why he was no longer a crew leader. (Depo. of Mr. Mallett, July 20, 2004, p. 138, Exhibit B).

**Deny, the plaintiff was told by a co-worker that Kaine and Becker were going to set up the plaintiff in that position as crew leader. Plaintiff's affidavit, ¶49.**

56.     In early October, 2000, Marineau assigned Mr. Mallett the additional responsibility of being the employee on the road crew who would issue Confined Space Entry Permits. He seemed pleased with this added responsibility, and continued to do this through the date of his workers compensation leave in March, 2001. (Affidavit of Janet Marineau, Exhibit D)

**Admit.**

57.     The plaintiff was denied leaf-raking overtime in November, 2000, and claimed that this was contrary to past practice and a union agreement. (Complaint, Count One Par. 49.)     **Admit.**

**58.**     The plaintiff filed a grievance over this denial of overtime related to leaf-raking, and. by award dated April 17, 2002, an arbitration panel of the State Board of Mediation and denied the grievance, finding that the Town had not violated a certain Memorandum of Agreement or any past practice by declining to allow Mr. Mallett to work the claimed overtime. (Depo. Of Mr. Mallett, July 20, 2004, pp. 54-57, 101, Exhibit B; Affidavit of Shirley Osle, Exhibit C, and Attachments 2 and 3, thereto).

       **Admit.**

59.     The plaintiff does not claim that the denial of leaf-raking overtime in November, 2000 was retaliation by the Town for anything. (Depo. Of Mr. Mallett, July 20, 2004, p. 101, Exhibit B).

       **Admit.**

60.     On or about February 7, 2001, the plaintiff (a white male) and the defendant, Mr. Conklin, were involved in a verbal confrontation, whereby Mr. Conklin allegedly called him a "cunt" and that he was "going down, nigger." (Complaint, Count One, Par. 51).

       **Admit.**

61.     Shortly thereafter, that same morning, Mr. Conklin apologized for his words, he represented to the plaintiff that he was a "good guy," and shook his hand (Depo. Of Mr. Mallett, December 4, 2001, p. 109-110, Exhibit A).

       **Admit.**

62.    The plaintiff reported the incident to his supervisor regardless of Mr. Conklin's apology and subsequent conduct. (Depo. of Mr. Mallett, December 4, 2001, p.l 10, Exhibit A; July 20, 2004, p. 168, Exhibit B).

**Admit.**

63.    Thereafter, on February 22, 2000, the Town suspended Mr. Conklin for one day. (Complaint, Count One, Par. 51; Affidavit of Janet Marineau)

**Admit.**

64.    The plaintiff did not report any alleged incident of harassment by Kaine to management. (Depo. of Mr. Mallett, July 20, 2004, p. 168, **Exhibit B).**

**Admit.**

65.    The plaintiff claims to have reported only two or three instances of harassment by Becker to management, namely, the name-calling incidents in July, 1993 as alleged in Paragraphs 28 and 29 of the Complaint, and none since then. (Depo. of Mr. Mallett, July 20, 2004, p. 168-70, Exhibit B).   On or about August, 1993, Town Manager Bohenko interviewed Mr. Mallett at length, inter alia, about his own complaints against Becker, and, thereafter, disciplined Becker. Complaint, Par.31, 32; Depo. of Mr. Mallett, December 4, 2001, p.61-64, Exhibit A; July 20, 2004, pp. 47-50, Exhibit B).

**Deny, that Kaine did harass and retaliate against him consistently from 1995 through 2001 when his employment ended with the WPC but the plaintiff did not complain for fear of further retaliation. Mallet 2001 Deposition, ¶¶ 91; Mallet 2004 Deposition, ¶¶ 167-171.**

66.    The plaintiff does not now of any decisions by then Town Manager Jackson with respect to his employment. (Depo. of Mr. Mallett, July 20, 2004, p. 145, Exhibit B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

67.    The plaintiff does not remember complaining to Jan Marineau regarding specific individuals, and does not know if she made any decisions with respect to his employment. (Depo. of Mr. Mallett, July 20, 2004, p. 145, 146, Exhibit B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

68.    The plaintiff believes that Shirley Osle made decisions with respect to his employment but cannot remember what they might have been. (Depo. of Mr. Mallett, July 20, 2004, p. 146.

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

69.    The Defendant John Bohenko did not retaliate against, harass, or defame Mr. Mallett in any way. (Depo. Of Mr. Mallett, July 20, 2004, p. 99, Exhibit B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

70.    The Defendant Robert Jackson did not retaliate against, harass, or defame Mr. Mallett in any way. (Depo. Of Mr. Mallett, July 20, 2004, p. 99, Exhibit B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

71.    The Defendant Shirley Osle did not retaliate against, harass, or defame Mr. Mallett in any way. (Depo. Of Mr. Mallett, July 20, 2004, p. 100, **Exhibit** B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

72.    The Defendant Robert Jahn did not retaliate against, harass, or defame Mr. Mallett in any way. (Depo. Of Mr. Mallett, July 20, 2004, p. 100, **Exhibit** B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

73.    The Defendant Janet Marineau did not retaliate against, harass, or defame Mr. Mallett in any way. (Depo. Of Mr. Mallett, July 20, 2004, pp. 100, 111-12, Exhibit B).

**Deny, Bohenko, Jackson, Osle, John, and Marineau knew, and or should have known that he was not being treated fairly and that he was suffering. He presented a 12 page letter to Osle detailing his misery. Plaintiff's affidavit ¶ 50.**

74.     The Town encouraged Mr. Mallett to receive more training, helped him to get it, together with various certifications in waste water management. (Depo. Of Mr. Mallett, July 20, 2004, p. 100, 111-12, Exhibit B).

**Admit.**

75.     The plaintiff does not allege that he ever complained to management about being "physically threatened" by anyone. (Complaint).

**Deny, the plaintiff complained about being physically threatened by Conklin.**

76.     The plaintiff does not know in what way, if any, Defendants Bohenko, Jackson, Osle, Jahn or Marineau intended to harm him. (Depo. Of Mr. Mallett, July 20, 2004, p. 147, Exhibit B).

**Admit.**

77.     From approximately March 27, 2001 until June 18, 2001, Mr. Mallett was on workers compensation leave for a hernia. He did not return to work when released from treatment on or about June 18. 2001. (Affidavit of Shirley Osle, **Exhibit** C)

**Admit.**

78.     From approximately June 19, 2001, through April 26, 2002, Mr. Mallett was on paid sick leave. When his accumulated paid sick leave had been exhausted, on April 29, 2002, he did not return to his position. There being no further leave available or applicable to him, and his not presenting for work, he was deemed to have resigned. A letter describing this circumstance was sent to him on     (Affidavit of Shirley Osle, Exhibit C).

**Deny, the plaintiff repeatedly pleaded for the Town to provide him with a safe and healthy workplace. He asked for a transfer out of the WPC, which was denied and the plaintiff could not return to the work environment. Plaintiff's affidavit, ¶ 51.**

THE PLAINTIFF,

BY: _____
      Erin I. O'Neil, Esq.
      Brewer & O'Neil
      818 Farmington Avenue
      West Hartford, CT 06119
      (860)523-4055
      Federal Bar #ct23073

## CERTIFICATION

    This is to certify that a copy of the foregoing was faxed or mailed, postage prepaid, on this November 19, 2004,  to all counsel of record including:

Dennis G. Ciccarillo
Eisenberg, Anderson, Michalik & Lynch
136 West Main St.
PO Box 2950
New Britain, CT 06050-2950

J. William Gagne, Jr.
J. William Gagne & Assoc.
1260 Silas Deane Highway
Wethersfield, CT 06109

Alexandria L. Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

_____
Erin I. O'Neil