UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD MALLET,<br>    PLAINTIFF | NO.: 3:01 CV 1137 |
| V. | |
| TOWN OF PLAINVILLE, ET AL.<br>    DEFENDANTS | MAY 16, 2005 |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

The plaintiff, Richard Mallet, submits this supplemental memorandum of law in opposition to defendants Town of Plainville, John Boehnko, Robert Jackson, Shirley Osle, Robert Jahn, and Janet Marineau's ("the Town defendants") motion for summary judgment; defendants Donald Becker, James Kaine, and Michael Conklin's ("the individual defendants") motion for summary judgment; and defendants Butch Paradis, Steven Clark, and AFSCME Local 1303-56's ("the Union defendants") motion for summary judgment.

Mr. Mallet maintains the positions taken in his November 19, 2004 memorandum of law in opposition to all defendants' motions for summary judgment as well as the associate Local Rule 56 (a) (1) & (2) statements. He supplements his November 19, 2004 memorandum in response to all defendants' renewal of their motions for summary judgment. Although this memorandum focuses on the eighth count of Mr. Mallet's complaint, dealing with intentional infliction of emotional distress, he does not abandon or withdraw counts one, two, three, or four.

**ORAL ARGUMENT REQUESTED**

1

I.  **PRELIMINARY STATEMENT**

Richard Mallet began his employment with the Plainville Water Pollution Control Department ("WPC") in 1991. Donald Becker was the union vice president and a co-worker of Mallet. James Kaine was another employee of the WPC and was Mallet's supervisor. Michael Conklin was Mallet's co-worker. Shortly after Mallet began his employment with WPC, he had a confrontation with Becker. Following the confrontation, Becker along with Kaine and Conklin began to torment Mallet. This torment occurred for several years, spearheaded by Becker, culminating in Mallet's decision not to return to work after given leave for a hernia in 2001.

II.  **STATEMENT OF FACTS RELEVANT TO COUNT EIGHT**

   A.  **Becker**

Becker had a pattern of harassment against Mallet. In 1993, Becker blocked Mr. Mallet's path while Mr. Mallet was attempted to move a bail of rags into a building. (Mallet dep. 12/4/01 p. 56) (Attached as exhibit one). After Mr. Mallet moved the bail inside, Becker called Mr. Mallet a "fucking queer," among other things. (Mallet dep. 12/4/01 p. 56). Mallet felt physically threatened by Becker during this encounter. (Mallet dep. 7/20/04 p. 17, 154) (Attached as exhibit two). That same year Becker also drove by Mr. Mallet and said "fuck you asshole." (Mallet dep. 12/4/01 p. 59). Also in 1993, while Mr. Mallet was emptying a garbage can, Becker came up and began to make "baby noises" in Mr. Mallet's ear while Kaine, in the background, mocked Mr. Mallet. (Mallet dep. 12/4/01 p. 60). In June, 1993, Becker drew and placed derogatory picture of either Mallet or his wife on the bulletin board at the location Mallet was working at. (Mallet dep. 7/20/04 p. 14-16).

In 1994, Becker, in response one of Mallet's grievances of him, placed garbage all over one of the bulletin boards at the location where Mr. Mallet was assigned. (Mallet dep. 12/4/01 p. 65). Between 1993 and 1995 Becker and Kaine frequently singled out Mallet at meetings for unjustified criticism. (Mallet dep. 12/4/01 p. 79). In 1995, Becker told Mallet that he was trying to push Mallet over the edge psychologically. (Mallet dep. 7/20/04 p. 157). At some point in 1993 or later, Becker called Mallet a "fat ass." (Mallet dep. 7/20/04 p. 169-70). Between 1999 and 2001, Becker repeatedly changed the location of Mallet's time card for no work related reason. (Mallet dep. 12/4/01 p. 125). During that same period, Becker repeatedly threatened Mallet during crew meetings. (Mallet dep. 12/4/01 p. 126).

### B.     Kaine

Kaine harassed Mallet on his own and also frequently assisted Becker. In 1999, Mr. Mallet was unable to attend a union meeting because he was working a second job to put his child through college. (Mallet dep. 12/4/01 p. 87-8). The day after the union meeting, Mr. Mallet went to the break room to get his assignment. (Mallet dep. 12/4/01 p. 88). Kaine began taunting Mr. Mallet, so Mr. Mallet left the break room but Kaine pursued him. (Mallet dep. 12/4/01 p. 89). Kaine proceeded to call Mr. Mallet "a piece of shit and said that [Mallet] always was a piece of shit." (Mallet dep. 12/4/01 p. 89). Kaine then clenched his fists, placed them in a boxing position, got very close to Mallet, and said "come on" with a "rage in his eye." (Mallet dep. 12/4/01 p. 88-9; Mallet dep. 7/20/04 p. 105, 153). In June of 2000, Kaine confronted Mallet after Mallet had misunderstood the assignment for the day. (Mallet dep. 12/4/01 p. 91). Kaine threatened Mallet, saying "if you mess with me, I'll mess with you" and "you're never going

3

anywhere in this department." (Mallet dep. 12/4/01 p. 91). As part of the harassment, Kaine contributed to Mallet being denied overtime in and around 2000. (Mallet dep. 7/20/04 p. 101-03).

### C. Conklin

Conklin also participated in the harassment of Mallet, both alone and with Becker and Kaine. In February, 2001, Conklin confronted Mallet in the break room and accused him of stealing time from the WPC by getting paid while at home in bed. (Mallet dep. 12/4/01 p. 108). During this confrontation, Conklin threatened Mallet while they were in the break room, calling Mallet a "cunt" and saying "you're going down nigger." (Mallet dep. 12/4/01 p. 104-05). At another point, Conklin was hanging off of the side of a truck and received an injury, but filled out an accident report indicating falsely that Mallet was partially responsible. (Mallet dep. 12/4/01 p. 106). At some point after 1999, Conklin loudly smacked a punching bag when Mallet was in the room, causing Mallet to feel physically threatened. (Mallet dep. 7/20/04 p. 150). In 2001, Mallet believed that Conklin placed a bunch of rat traps outside of the building Mallet was assigned to work in, in retaliation for Mallet's association with his neighbor, Mr. Cunningham.[1] (Mallet dep. 12/4/01 p. 107).

### D. The Effects

As a result of the abuse that Mallet suffered, he sought psychological counseling. (Mallet dep. 7/20/04 p. 28-9). Another result of the harassment was that Mallet lost the will to stand up for himself against the harassment. (Mallet dep. 7/20/04 p. 112). Mallet also stopped fighting the harassment because he was afraid that it would simply trigger more aggressiveness on the part of the defendants. (Mallet dep. 7/20/04 p.

---

[1] Mr. Cunningham was the individual who requested the records from the WPC.

167). In Mallet's own words, "[i]t got to the point where when a man tells you he's trying to push you over the edge, I wasn't sure what he was capable of or his friends. I don't know. How could I be sure what was next? Especially considering the last incident. What was going to be next? You know, when a guy's got his finger in your face, rage in his eyes, I don't know what else can happen." (Mallet dep. 7/20/04 p. 167).

### III.   ARGUMENT

#### A.   Standard Of Review

The standard governing the appropriateness of summary judgment is well defined. Federal Rule of Civil Procedure 56 (c) provides that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The movant must satisfy a burden of showing the absence of a genuine issue as to any material fact. Celotex, 477 U.S. at 323-25, 106 S.Ct. at 2553-54; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); LaFond v. General Physics Services Corp., 50 F.3d 165, 171 (2d Cir. 1995).

In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits and depositions must be viewed in the light most favorable to the party opposing the motion. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); see also Cronin, 46 F.3d at 202.

If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Cronin, 46 F.3d at 203.

**B.      Relevant Law**

      1.      Intentional Infliction of Emotional Distress

To make a claim for intentional infliction of emotional distress, the plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." Benton v. Simpson, 78 Conn. App. 746, 753, 829 A.2d 68, 73 (2003). Punitive damages may be awarded to a plaintiff proving intentional infliction of emotional distress. Berry v. Loiseau, 223 Conn. 786, 811-12, 614 A.2d 414, 427-28 (1992).

      2.      Continuing Course of Conduct

The Connecticut Supreme Court has "recognized . . . that a statute of limitations may be tolled under the . . . continuing course of conduct doctrine." (Internal quotation marks omitted.) Sherwood v. Danbury Hosp., 252 Conn. 193, 202-03, 746 A.2d 730, 735-36 (2000). Courts have applied to the continuing course of conduct doctrine when "there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Sherwood v. Danbury Hosp., 252 Conn. at 203, 746

6

A.2d at 736. "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Blanchette v. Barrett, 229 Conn. 256, 276, 640 A.2d 74, 85 (1994). The continuing course of conduct doctrine covers affirmative acts of misconduct; Giulietti v. Giulietti, 65 Conn. App. 813, 835, 784 A.2d 905, 926, cert. denied, 258 Conn. 946, 788 A.2d 95 (2001); and is "conspicuously fact-bound." Blanchette v. Barrett, 229 Conn. at 276, 640 A.2d at 85. Courts have applied the continuing course of conduct doctrine to toll the statute of limitations for claims for intentional infliction of emotional distress. DeOliveira v. Liberty Mut. Ins. Co., 2002 WL 2005777, *6, 9 (Conn. Super. Jul. 25, 2002) (Attached as exhibit 3).

    C.    **Summary Judgment Should Be Denied**

        1.    <u>All incidents from 1993 onward should be considered</u>

The defendants seek to limit Mallet's intentional infliction of emotional distress claim to the incidents occurring three years prior to initiation of this lawsuit. This Court should apply the continuing course of conduct doctrine and factor all of the incidents from February 24th, 1993, when Mallet returned to work at the WPC, until Mallet left the WPC. (Mallet dep. 12/4/01 p. 52). Although the continuing course of conduct doctrine is associated commonly with negligence actions, it is applicable to intentional infliction of emotional distress claims. DeOliveira. 2002 WL 2005777 at *6, 9. In DeOliveira the court denied the defendant's summary judgment as to the plaintiff's claim for intentional infliction of emotional distress. Id., at *1, 11. The court stated "plaintiff's causes of action all have a three-year statute of limitations" but found that because "plaintiff has adequately alleged that the defendant engaged in 'wrongful'

conduct within the limitations period that was related" to the initial wrong, the statute of limitations did not bar the plaintiff's claim on intentional infliction of emotional distress. Id., at *5-6

For the continuing course of conduct to apply, there must either be a special relationship between the parties or there must be later tortious behavior that relates to previous tortious behavior. Sherwood, 252 Conn. at 203, 746 A.2d at 736. Becker, Kaine, and Conklin had a unique relationship with Mallet because they were able, or they created the perception that they were able, exert influence on promotions, overtime, and work assignments. (Mallet dep. 12/4/01 p. 84-5, 102-04; Mallet dep. 7/20/04 p. 60, 78-9, 81, 103).[2] Becker, Kaine, and Conklin also placed themselves in a special position vis-à-vis Mallet by organizing the entire work crew, consisting of seven or eight individuals, to shun Mallet. (Mallet dep. 7/20/04 p. 60-66). Indeed, as Mallet stated, "I also believe that if someone in that crew could do me harm or take an opportunity from me, I believe – I believe that Donald Becker and James Kaine looked approvingly on that." (Mallet dep. 7/20/04 p. 163). Becker was also responsible for denying Mallet the opportunity for overtime. (Mallet dep. 7/20/04 p. 69-75). Further, all three were involved in the union, which maintained a special relationship with Mallet. (Mallet dep. 12/4/01 p. 87-9).

Becker, Kaine, and Conklin also continued to commit "later wrongful conduct . . . related to [their] prior act[s]." See Sherwood, 252 Conn. at 203, 746 A.2d at 736. They continued their harassment of Mallet throughout the course of his employment. They

---

[2] Even if this Court where to hold that Becker, Kaine, and Conklin lacked the actual ability to influence promotions, overtime, and assignments, it should still hold that it they had a special relationship vis-à-vis Mallet. This is because they held themselves out as having this influence. To hold otherwise, i.e., that they did not have a special relationship with Mallet even though they held themselves out as having authority they did not, would be to allow defendants to affirmatively deceive others and then escape liability *because of their lies*.

organized the work crew to shun Mallet. (Mallet dep. 7/20/04 p. 60-66). Becker denied Mallet overtime, (Mallet dep. 7/20/04 p. 69-75), and told Mr. Mallet that he was trying to "push [Mallet] over the edge psychologically." (Mallet dep. 7/20/04 p 118).

Mallet has presented, both in his complaint and in his deposition testimony, sufficient facts to show Becker, Kaine, and Conklin's continuing course of conduct to intentionally inflict emotional distress on Mallet. It is inappropriate, at the summary judgment stage, to limit Mallet's intentional infliction of emotional distress claim to the three years prior to the complaint because the application of the continuing course of conduct doctrine is "conspicuously fact bound." Blanchette, 229 Conn. at 276, 640 A.2d at 85.

    2.    <u>Mallet has presented sufficient facts in support of his claim for intentional infliction of emotional distress</u>

Mallet, in his depositions, has presented sufficient facts to overcome the defendants' motions for summary judgment. The defendants have offered no evidence that their actions were unintentional and even if they were to claim that they did not intend to harm Mallet "the intent of the parties is entirely a question of fact the resolution of which is rarely appropriate on a motion for summary judgment. Clements v. County of Nassau, 835 F.2d 1000, 1005 (2d Cir. 1987)." U.S. v. Sitka, 1994 WL 389473, *6 (D.Conn. 1994). The defendants also do not contest causation.

Defendants Becker, Kaine, and Conklin all argue, rather, that their conduct does not rise to the level of "extreme and outrageous." "A review of recent Connecticut decisions on the issue of extreme and outrageous conduct within the context of a claim for intentional infliction of emotional distress reveals that there is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain this

action. The court looks to the specific facts and circumstances of each case in making its decisions." Longo v. Waterbury Hosp. Health Center, 2005 WL 407785, *2 (Conn.Super. Jan. 14, 2005) (Attached as exhibit four). "Plaintiffs have, however, been successful in establishing claims for intentional infliction of emotional distress where they have alleged that they were forced to suffer public ridicule." Oppenheim v. Gruell, 2005 WL 407594, *11 (Conn.Super. Jan. 11, 2005) (Attached as exhibit five). In Oppenheim, the court denied summary judgment as to the plaintiff's claim of intentional infliction of emotional distress because there was "an element of physical intimidation." Id. There, the defendant cursed at the plaintiff in front of others, got in her face, and momentarily blocked her from leaving the room. Id., 10.

Similar to Oppenheim, Mallet suffered physical intimidation at the hands of Becker, Kaine, and Conklin. See e.g., Becker - (Mallet dep. 7/20/04 p. 17, 154); Kaine - (Mallet dep. 12/4/01 p. 88-9; Mallet dep. 7/20/04 p. 105, 153); Conklin - (Mallet dep. 7/20/04 p. 150). Although the defendants would like this Court to draw the inference that Mallet was not physically threatened, they ignore the law; all inferences drawn by the Court must be in favor of Mallet. See Chambers, 43 F.3d at 36. Further, Mallet was publicly humiliated multiple times by Becker, Kaine, and Conklin. See e.g., Becker (Mallet dep. 12/4/01 p. 60, 65, 79; Mallet dep. 7/20/04 p. 14-16); Kaine – (Mallet dep. 12/4/01 p. 79); Conklin - (Mallet dep. 12/4/01 p. 107). In short, this case is extremely similar to Oppenheim, save that the plaintiff in Oppenheim was actually protected from her harasser, while here Mallet was not. Oppenheim, 2005 WL 407594, at *11.

This is not a case of "bad manners," Carrol v. Allstate Ins. Co., 262 Conn. 433, 443, 815 A.2d 119, 126 (2003); rather, the defendants intentionally and systematically

10

pushed Mallet over the psychological edge. It is a case where "an average member of the community would arouse his resentment against the [defendants], and lead him to exclaim, [o]utrageous!" Id. As such, this Court should deny the defendants' motions for summary judgment as to count eight.

THE PLAINTIFF,
RICHARD MALLET

By: _____
David C. Nelson
(Federal Bar no. CT25640)
GARRISON, LEVIN-EPSTEIN,
CHIMES
    & RICHARDSON, PC
405 Orange Street
New Haven, CT 06511
Ph: (203) 777-4425
Fax: (203) 776-3965
DNelson@Garrisonlaw.com

## CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via first class mail, postage prepaid, as indicated below, on this 16th day of May, 2005 to:

Attorneys for Defendants, Town of Plainville, John Bohenko, Robert Jackson, Shirley Osle, Robert Jahn, and Janet Marineau:

**Dennis G. Ciccarillo, Esq.**
Eisenberg, Anderson, Michalik & Lynch
136 West Main Street, P.O. Box 2950
New Britain, CT  06050-2950
(860) 225-8403

Attorneys for Defendants, Donald Becker, James Kaine and Michael Conklin:

**Alan Neigher, Esq.**
Byelas & Neigher
1804 Post Road East
Westport, CT  06880
(203) 259-0599

**Alexandria L. Voccio, Esq.**
**Daniel C. DeMerchant, Esq.**
**Melinda A. Powell, Esq.**
**Michael J. Rose, Esq.**
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114-1190
(860) 249-1361

Attorneys for Defendants, Butch Paradis, Steven Clark, and American Federation of State & Municipal Employees (AFSCME):

**J. William Gagne, Jr., Esq.**
J. William Gagne & Associates
970 Farmington Avenue, Suite 207
West Hartford, CT  06107
(860) 522-5049

_____
David C. Nelson